# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**      **:**

       **v.**                 **:**         **CRIMINAL NO.  04-680-06**

**TYRONE TRADER**         **:**


AND NOW, this      day of        , 2014, it is hereby

## O R D E R E D

that the defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255

is denied.  Because the defendant has made no "substantial showing of a denial of any

constitutional right," in order to justify an appeal, *see* *Santana v. United States*, 98 F.3d 752, 757

(3d Cir. 1996), no certificate of appealability will be issued.



**BY THE COURT:**


_____
**HONORABLE JAN E. DUBOIS**
**Judge, United States District Court**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 04-680-06** |
| **TYRONE TRADER** | : | |

**GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO VACATE,
SET ASIDE, AND CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

The United States of America, by its attorneys, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and Kathy A. Stark, and Katayoun M. Copeland, Assistant United States Attorneys for the District, hereby responds to petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 and states as follows:

I.      **Procedural Background**

On April 13, 2005, the grand jury returned a 53-count superseding indictment against Petitioner Tyrone Trader, as well as co-defendants Louis Stillis, Jamal Rideout, and Larry Davis,[1] Tyrone Smith, William Green, Kenneth Wilson, Sherron Moore, and Richard Robinson. Count One charged all nine defendants with conspiracy to distribute five or more kilograms of cocaine in Philadelphia County and Delaware County from in or about July 2003, to in or about December 2004, in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A).

---

[1] Stillis, Rideout, and Davis proceeded to trial with Trader.

In addition to the conspiracy count in which all defendants were charged, Trader was charged with distribution of cocaine in Counts Two, 21, 22, and 50, and with distribution of cocaine within 1,000 feet of a school in Counts Three, 23, and 51.

Defendants Smith, Green, Robinson, Moore, and Wilson pled guilty before trial. Stillis, Trader, Rideout, and Davis proceeded to trial on January 3, 2007. On January 16, 2007, at the close of the government's case, all four defendants moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the government had presented insufficient evidence of the existence of a conspiracy and of each defendant's participation in the conspiracy. The district court denied all motions the same day. On January 18, 2007, the jury returned a verdict convicting the four defendants on all counts.

On January 25, 2007, Trader filed a motion for judgment of acquittal or for a new trial on Counts One, 22, and 23, alleging that the evidence was insufficient to support his conviction. On June 6, 2007, defendant Trader filed a Motion to Join a Second Supplemental Motion that had been filed by defendant Stillis that alleging "the evidence adduced at trial was legally insufficient to support the jury's verdict that the conspiracy for which he was found guilty began in July 2003 or that the conspiracy involved the distribution of more than five kilograms of cocaine." The Court permitted Trader to join in Stillis' second supplemental motion.

In an order and opinion dated July 16, 2007, the District Court denied Trader's motions as to Count One, concluding,

> [T]he Court concludes that a reasonable juror could accept the evidence at trial as sufficient to support the finding of the jury that the defendants were guilty beyond a reasonable doubt on Count One….. As the government has described in detail, there was sufficient evidence on the issue of drug quantity in general, and the duration of the conspiracy to support the jury's verdict.

District Court Opinion, July 16, 2007, p. 10-11. The Court furthermore, denied Trader's motions as to Counts Twenty-Two and Twenty-Three, finding, "there was sufficient evidence to establish that defendant Trader aided and abetted the crimes charged in Counts Twenty-Two and Twenty-Three." Id. at 14.

On August 21, 2007, trial counsel filed a motion for reconsideration of the Court's denial. On August 24, 2007, Trader moved pro se for reconsideration of the denial of his motion for acquittal or new trial, arguing that the government failed to present sufficient evidence at trial that Trader should be held responsible under Count One for 5 kilograms or more of cocaine. On September 12, 2007, upon request of defendant, this Court granted Trader's motion for appointment of new counsel. On February 22, 2008, after consideration of supplemental memoranda submitted by Trader's counsel and by Trader pro se, the Court denied the motion for reconsideration, as well as the additional pro se motions filed by Trader. Once again, the Court re-iterated, "the government presented significant evidence linking defendant Trader to the charged conspiracy" and that furthermore, "there was sufficient evidence for the jury to infer knowledge on the part of defendant Trader of the [']illicit purposes and the nature of the operation of the conspiracy['] to distribute *at least* [emphasis added] five kilograms of cocaine." Trial Court Opinion, February 22, 2008, p. 4.

On October 31, 2007, defendant Rideout appeared for sentencing and presented a pro se supplement to the motion for judgment of acquittal made by his counsel during trial. The district court denied the motion for acquittal, but adjourned the sentencing hearing and directed all remaining parties to submit supplemental sentencing memoranda concerning the quantities of cocaine attributable to defendants Rideout, Trader, Moore, Robinson, and Davis.

On June 25, 2008, Trader filed another pro se motion for judgment of acquittal. The district court denied the motion on June 30, 2008. On September 29, 2008, after consideration of the supplemental memoranda as to drug quantity, the district court sentenced Trader to life imprisonment on Count One and concurrent sentences of 180 months' imprisonment as to Counts Three, 21, 23, and 51. Trader filed a notice of appeal on October 3, 2008. On appeal, Trader raised the following issues: (1) in determining the minimum mandatory sentence applicable to Count One, the District Court plainly erred by abdicating its fact finding responsibilities concerning the weight of cocaine at issue in that Court when it exclusively relied upon and applied as fact the jury's answer to a special interrogatory submitted to the jury for the required purpose of determining the applicable statutory maximum sentence; (2) because the evidence presented at trial proved only that appellant was a street level seller of cocaine, appellant is entitled to judgment of acquittal concerning the jury's conclusion that the government proved beyond a reasonable doubt that the quantity of cocaine appellant knowingly and intentionally conspired to distribute in connection with Count One was equal to or greater than five kilograms; and (3) the District Court erred in the manner in which it instructed the jury to consider the weight issue. On July 12, 2011, the Third Circuit Court of Appeals affirmed Trader's conviction in a non-precedential opinion, finding that,

> Trader was liable for all reasonably foreseeable criminal offenses committed by his co-conspirators during the course of, and in furtherance of, the drug conspiracy. See Pinkerton v. United States, 328 U.S. 640, 646-48 (1946). Considering Trader's close relationship with Stillis and the other street-level sellers, as well as Trader's knowledge that Stillis obtained large amounts of cocaine from Green, it was reasonably foreseeable to Trader that the conspiracy would distribute more than five kilograms of cocaine. Accordingly, we will affirm the District Court's denial of Trader's motion for judgment of acquittal or new trial on Count One.

United States v. Tyrone Trader, 3d Cir. Slip Op. (July 12, 2011), p. 11.  Furthermore, the Third

Circuit upheld this Court's sentencing procedure, and concluded,

> [C]ontrary to Trader's argument that the District Court erred by failing to engage in an individualized sentencing inquiry, the relevant statutes deprived the District Court of discretion to choose Trader's sentence.  See United States v. Robinson, 547 F.3d 632, 640 (6th Cir. 2008) ("[T]he district court had no occasion to determine the amount or kind of drugs for which Robinson was personally responsible because there was no range within which the court had discretion to choose a sentence; the quantity of cocaine involved in the conspiracy and Robinson's prior felony drug convictions triggered a mandatory life sentence.").

Id. at 8.  Trader did not file a Petition for Certiorari in the Supreme Court.

Trader filed a timely petition to vacate, set aside, or correct sentence on

November 26, 2012.[2]  Trader raises nine[3] claims of error in his petition.  They are:  (1) his

conviction and sentence are based upon insufficient evidence; (2) the government presented

evidence of multiple conspiracies, allowing prejudicial evidence to be admitted at trial; (3) the

government violated the Sixth Amendment by not calling the drug experts who weighed and

tested the drug evidence, resulting in a Crawford violation; (4) the government's use of "fact"

witnesses to give expert testimony resulted in prejudice; (5) the government engaged in

prosecutorial misconduct; (6) ineffective assistance of trial and appellate counsel; (7) the

"Cumulative Error Doctrine" requires that a new trial be granted; (8) the unconstitutionality of

---

[2] Trader mailed his final petition on November 26, 2012, and it was filed in the district court on December 3, 2012.  Trader filed his initial petition on October 12, 2012, albeit on the wrong form.  The District Court ordered that he be furnished with the correct form, and by order dated October 18, 2012, deemed any subsequent petition filed by Trader as having been filed as of October 12, 2012.

[3] In Trader's initial § 2255 motion filed on December 3, 2012, he raised seven grounds as the basis to vacate, set aside, or correct his sentence.  On August 15, 2013, Trader filed an amended motion under § 2255, adding two additional grounds:  the unconstitutionality of his life sentence and abuse of discretion of the District Court in allowing the lead case agents to sit at the prosecution's counsel table during trial.  Procedurally, these claims are untimely, and therefore should be dismissed.  Nonetheless, the government will address the same and refer to them respectively as Grounds 8 and 9.

his life sentence of imprisonment based upon <u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013); and (9) abuse of discretion of the District Court in allowing the lead case agents to sit at the prosecution's counsel table during trial. None of the claims raised in Trader's petition have merit, and his motion should be denied.

## II.    Statement of Facts

### A.    The Indictment.

On April 13, 2005, a federal grand jury returned a superseding indictment charging Trader and the nine other defendants with conspiracy to distribute five or more kilograms of cocaine in Philadelphia County and Delaware County from in or about July 2003, through in or about December 2004, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A). In addition, the indictment charged defendant Trader with distribution of cocaine in Counts Two, 21, 22 (and aiding and abetting), and 50, in violation of 21 U.S.C § 841(a)(1), (b)(1)(C) and with the distribution of cocaine within 1,000 feet of a school in Counts Three, 23 (and aiding and abetting the distribution), and 51, in violation of 21 U.S.C. §§ 860(a), 841(b)(1)(C) and 18 U.S.C. § 2.

### B.    Evidence of the Conspiracy.

Tyrone Smith headed a conspiracy that distributed large quantities of cocaine in the Delaware County area. Smith imported the cocaine in multi-kilogram shipments, which he then distributed to several individuals, including his cousin, William Green. Supp. App. 505-09.[4] Green was the main supplier for Louis Stillis, who employed a number of people to distribute cocaine in an area of Delaware County known as Toby Farms. Stillis' subordinates

---

[4] Upon request, the government will provide the Court with the Supplemental Appendix.

included Tyrone Trader, Jamal Rideout, Larry Davis, Kenneth Wilson, Richard Robinson, and Sherron Moore.

Green's association with Stillis began in the summer of 2003, when Stillis called Green and asked Green to "make a move for him" – that is, obtain cocaine from Tyrone Smith for Stillis. Supp. App. 520. On that first occasion, Trader drove Stillis, Green and Rideout to Germantown Avenue in Philadelphia, where Green met with Smith. Stillis provided $13,500 to Green, which Green gave to Smith in exchange for approximately a half-kilogram of cocaine. Supp. App. 521-25. Smith was annoyed that Green had brought Stillis, Trader, and Rideout with him, and told Green to do all further transactions one-on-one with Smith. Supp. App. 525. From that point forward, Green collected money from Stillis' group, obtained the cocaine from Smith, and then delivered it back to Stillis' group in Delaware County. Supp. App. 530.

Green testified at trial that between summer 2003 and the end of summer 2004, he received a full kilogram of cocaine from Smith on at least two occasions, and did a number of other transactions in which he received some fraction of a kilogram of cocaine, stating that he did this "at least six or seven times." Supp. App. 511-13. Green estimated that he supplied cocaine to Stillis about once or twice a month, and that the quantities ranged from 4½ ounces (125 grams) to half-kilograms (500 grams). Supp. App. 516-17, 563-64, 576-77, 1145, 1206. Green delivered the cocaine directly to Stillis or to codefendant Kenneth Wilson. Supp. App. 579, 1212.

Kenneth Wilson also testified at trial, but estimated that he or Stillis picked up cocaine from Green about once per week, rather than once or twice per month, as stated by Green. Supp. App. 365-66. Stillis then took the cocaine and divided the bulk amount into

smaller packages to distribute among his street sellers, usually delivering half-ounce (14 gram) or full ounce (28 gram) packages.  Supp. App. 303, 785-88.

Stillis stored and re-packaged the cocaine into smaller quantities at several locations in Delaware County.  Frequently, he stored cocaine at a home shared by Tyrone Trader and Sherron Moore.  Supp. App. 366-67, 869, 1164.  Sometimes Stillis repackaged the cocaine himself at Trader's home, and sometimes Trader and Moore repackaged the cocaine for Stillis.  Supp. App. 366-67.

Stillis also stored and repackaged cocaine at the home of Richard Savage, a cocaine user who regularly purchased from Stillis.  Savage testified that Stillis used Savage's home to repackage the cocaine into small bags for street sale.  Supp. App. 714.  Both Richard Savage and his wife Donna Savage found cocaine stashed in their home.  On at least one occasion, Donna Savage observed a "brick," or one entire kilogram of cocaine.  Supp. App. 687, 720.

Kenneth Wilson testified that he delivered cocaine he received from Stillis to several individuals who served as sellers. The sellers to whom Wilson delivered cocaine included Robinson, Supp. App. 361, Moore, Supp. App. 438-41, 1151, Trader, Supp. App. 312, Davis, Supp. App. 307, and Rideout, Supp. App. 310-11.  Stillis "fronted" the cocaine to the sellers, allowing them to pay him after the drugs were sold rather than when they received the cocaine. Supp. App. 305, 791.

Stillis imposed a weekly quota of cocaine sales on the sellers.  Generally, the sales quota for each seller was approximately one ounce, which the conspirators referred to as an "onion."  Supp. App. 787.  Wilson received approximately one ounce per week, and Robinson typically took an ounce once every week or two.  Supp. App. 303, 789.  Stillis chastised sellers

who did not meet their quota.  In a recorded telephone call, Stillis asked Trader, "[w]hat were you doing all week with that punk-ass onion?"  Supp. App. 1139.  In another recorded call, Davis reported to Stillis that he was not ready for more cocaine.  Stillis audibly sighed, and Davis replied, "[y]eah, I know, you didn't want to hear that."  Supp. App. 1152.

The sellers, including Trader, sold the cocaine to users in the Toby Farms area. Some of these customers testified at trial about their cocaine purchases from Stillis' sellers. Supp. App. 425-55, 1151 (David Wilkins); 455-87, 1149, 1178 (Eric Savercool); 645-72 (Alicia Czukiewski); 704-49 (Richard Savage); 256-65, 750-79, 1239, 1242 (Sandra Collins); 897-913, 1209-11, 1213-19 (Angela Sanbe).  The customers testified that the sellers sold the cocaine in bags containing approximately 0.25 grams.  These bags, which sold for $20, were referred to as "20's" or "Twinkies."  Supp. App. 760, 1240.  On occasion, they sold larger quantities, including "C-notes," or $100 sales, and "games" or "ball games," which weighed 3.5 grams and cost approximately $150.  Supp. App. 760, 795, 806-07, 1117, 1240.  Frequently, Stillis' subordinates sold cocaine at the Bridgewater Inn, a bar across the street from the Toby Farms Elementary School, in the Upland Borough of Chester Township.  Supp. App. 427-30, 645-46, 1106.  The defendants also sold cocaine at other locations, including Rideout's house.  Supp. App. 34-38, 190-94, 202-05, 223-27, 653.

Customers often called Stillis directly to ask for cocaine.  Supp. App. 472-73, 1186, 1190, 1200 (Savercool); 901-03, 1213 (Sanbe); 758-59, 1238 (Collins).  Stillis sometimes chose to meet with the buyer and make the sale himself.  Supp. App. 46, 238-41, 434, 646, 705, 1106.  Other times, he directed the customers to his sellers.  Supp. App. 436-37, 463-64, 757, 790-91, 1121, 1213-14.

The sellers also sold to users who contacted them directly. Eric Savercool testified that he bought cocaine from Jamal Rideout, approaching Rideout directly for the first buy and working through Stillis for the second. Supp. App. 478-79. Alicia Czukiewski also went directly to Rideout to buy. Supp. App. 669-70. She and Richard Savage bought from Stillis, Trader, Rideout, and Davis, all four of the defendants who proceeded to trial, at various locations. Supp. App. 672, 723-24.

Customers testified that they made numerous and frequent purchases. Sandra Collins, who admitted to a heavy addiction, testified that she bought "20's, 40's, 60's" "a couple times per day" in July 2003. Supp. App. 752-53. Recorded telephone calls between Collins and Stillis verified that, in July and August 2004, she was ordering $100 and $150 quantities. Supp. App. 758, 760, 762-62, 767, 1238, 1240-43, 1250. Richard Savage estimated that between July and December 2003, he bought cocaine from Stillis over 50 times, from Trader about 15 times, from Rideout around 50 times, and from Davis about 20 times. Supp. App. 709-14, 724.

Undercover state police officers testified that they bought cocaine from all four of the defendants who proceeded to trial, and from most of the defendants who pled guilty before trial. Supp. App. 27-46 (Trooper Michael Skahill); Supp. App. 163-70 (Trooper Mark Jenkinson); Supp. App. 190-206, 209-11 (Trooper Lois Stillwell); Supp. App. 270-84 (Trooper Sean Regan). Some of the sales were to undercover officers who were posing not as users, but as cocaine dealers purchasing for resale. These transactions were for larger quantities than the standard $20 to $100 sales typical for users.

At trial, Trooper Scott Miscannon testified that on July 15, 2004, Trader and Stillis delivered approximately nine ounces of cocaine (actually weighing 244.3 grams) to Miscannon in Toby Farms. Supp. App. 234-241, 243. During the transaction, Miscannon

described how Trader retrieved several clear baggies from the trunk of a coconspirator's vehicle, making it look as if he were retrieving a gas can. Supp. App. 240. During the meeting, Stillis and Trader referred to the high quality of the cocaine. Supp. App. 265, 266. During an earlier purchase on May 6, 2004, by Trooper Miscannon from Stillis, Stillis told him that the quality of the cocaine was so good, "you can put a one on it," meaning that the cocaine could be cut with a diluting agent to stretch it to twice its weight. Supp. App. 227.

The members of the conspiracy assisted each other in avoiding law enforcement. On August 5, 2004, Stillis phoned Davis to warn him that "narcs" "just picked up like three [people] up the way." When Davis asked who was arrested, Stillis provided several names, then said, "they didn't get nobody on our squad. . . man, just shut it down." Supp. App. 1157.

On August 21, 2004, Wilson made a pickup of cocaine from Green and was headed to meet Stillis to drop it off, when he noticed a vehicle following him. Suspecting it was an undercover police officer, Wilson contacted Stillis. As soon as he believed he had lost the officer, Wilson drove to Trader's house. Supp. App. 357. In a recorded telephone conversation, Stillis instructed Wilson to stay at Trader's house, where Stillis would meet him, instead of driving to meet Stillis at his house. Supp. App. 367, 1225.

Through physical surveillance and wiretap evidence, the investigating agents and troopers learned that Smith was planning to leave Philadelphia on September 10, 2004. Supp. App. 75. On September 9, 2004, they arrested Green, who agreed to cooperate by setting up a drug delivery by Smith, in the course of which Smith was to be arrested. Supp. App. 77-79. Stillis, Trader, Rideout, Davis, Moore, and Wilson were arrested on October 6, 2004. Supp. App. 99.

C.    **The Sentencing.**

On September 29, 2008, as the defendant had at least two previous convictions for felony drug trafficking, and the government had filed notice of these prior convictions under Title 21, United States Code, Section 851, and the conspiracy involved at least 5 kilograms of cocaine, Trader was sentenced to the mandatory minimum term of life' imprisonment on Count One and concurrent sentences of 180 months' imprisonment on Counts Three, 21, 23, and 51. The Court noted during the sentencing hearing that "the jury found that [Trader] was a member of a conspiracy, the Stillis-led conspiracy, and that the conspiracy distributed between 5 kilograms and 15 kilograms of cocaine." Trader Sent. Hrg., September 29, 2008, p. 7.    The Court then added, "The court finds, based on what is set forth in the Presentence Investigation Report, and the trial evidence and jury verdict, that the offense of conviction involves at least five kilograms but less than 15 kilograms of cocaine." Trader Sent. Hrg., September 29, 2008, p.18.

III.    **ARGUMENT**

A.  **Procedural Issues**.

1.  **The Court Previously Adjudicated Defendant's Insufficiency of the Evidence Claim Thus the Claim Remains Inappropriate for a 2255.**

Trader's Habeas Motion appears timely as the motion was filed within one year of the judgment becoming final.  The defendant's judgment became final after the denial of a motion for rehearing on October 28, 2011.   Clay v. United States, 123 S.Ct 1072 (2003); Kapral v. United States, 166 F.3d 565 (3d Cir. 1999).  On October 18, 2012, this Court ordered that "any motion for writ of *habeas corpus* pursuant to 28 U.S.C. § 2255 filed pursuant to the order of

October 17, 2012, shall be deemed to have been filed on October 12, 2012, the date on which

petitioner [Trader] filed his initial *habeas corpus* motion under 28 U.S.C. § 2255." Order,

Document 675, Filed October 22, 2012.  Therefore, Defendant's Habeas Motion is timely.

   However in his petition for post-conviction relief under 28 U.S.C. § 2255, Trader

makes a number of claims of which were, or should have been, raised on direct appeal.  Trader's

claim of insufficiency of the evidence should be barred from the Court's analysis pursuant to 28

U.S.C. § 2255(e) because the Third Circuit Court of Appeals previously adjudicated the issue on

Defendant's direct appeal.  The statute provides that "[a]n application for a writ of habeas corpus

in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section,

shall not be entertained if . . . such court has denied him relief, unless it also appears that the

remedy by motion is inadequate or ineffective to test the legality of his detention."  28 U.S.C. §

2255(e).

   Both in a post-trial Motion for Judgment of Acquittal and on appeal to the Third

Circuit, Trader argued there was insufficient evidence to establish that the quantity of cocaine

that the defendant conspired to distribute was 5 kilograms or more of cocaine and that the Court

improperly relied on the jury's finding in sentencing the defendant.  The appellate Court rejected

both arguments.  United States v. Tyrone Trader, 3d Cir. Slip Op. (July 12, 2011).  Here, Trader

yet again attempts to argue that the government presented insufficient evidence of his

involvement in the conspiracy, and the ultimate quantity attributable to him.  These issues are

virtually identical as the quantity attributable to the defendant and his involvement in the

conspiracy was a fundamental component for the Third Circuit finding sufficient evidence to

convict defendant of conspiracy to distribute 5 kilograms or more of cocaine.  This claim should

be therefore dismissed. As set forth below, even if this issue could be addressed again, it has no merit.

## 2. The Defendant has Previously Defaulted on the Majority of his Claims Contained in his 2255.

"A defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review." Sanchez-Llamas v. Oregon, 548 U.S. 331, 350-51, (2006). See Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998). The sole exception to this rule exists when a defendant can show "cause" for not raising the claim, and "prejudice" from not having done so. Id.

The cause requirement for failure to raise a claim requires that "some objective factor external to the defense" prevented defendant from raising the claim. Coleman v. Thompson, 501 U.S. 722, 753 (1991). Not only must the defendant meet this high burden, but in order to establish actual prejudice, he must also show that the error "worked to his actual and substantial disadvantage, infecting his entire trial with error." United States v. Frady, 456 U.S. 152, 170 (1982).

The only relevant exception to this rule remains a claim of ineffective assistance of counsel. In Massaro v. United States, 123 S.Ct. 1690 (2003), the Supreme Court held that a collateral proceeding under § 2255 is the most appropriate venue for a claim of ineffective assistance of counsel at trial, and that such a claim is not waived even if the defendant is represented by new counsel on direct appeal and does not present the issue at that time. The Court noted that there may be occasions when ineffectiveness is so clear on the trial record that the matter may be considered on direct appeal, but suggested that such cases are unusual.

Following <u>Massaro</u>, the Third Circuit has indicated that it will rarely, if ever, consider an ineffectiveness claim on direct appeal. <u>United States v. Thornton</u>, 327 F.3d 268 (3d Cir. 2003).

Trader attempts to establish "cause" by asserting that his trial and appellate counsel suggested that he wait until after his appeal to present these claims. Trader argues that counsel suggested these claims were meritorious but chose not to bring them up at trial or on appeal. Trader offers no evidence in support of this claim, and none can be found from a review of the record, leaving only Trader's bare assertion to support his "cause" claim. As will be demonstrated below, none of Trader's claims have merit, which is a much more realistic reason for counsel not to have raised them.

Even if Trader survived the first hurdle, he cannot make a sufficient showing of prejudice. In <u>Bousley v. United States,</u> 523 U.S. 614 (1998), the Supreme Court held that prejudice may be shown by demonstrating "actual innocence." According to <u>Bousley</u>, the petitioner must show that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. <u>Bousley, citing Schlup v. Delo</u>, 513 U.S. 298, 327-28 (1995) (actual innocence meaning factual innocence, not mere legal insufficiency). Although Trader makes the bald assertion that he is "actually innocent," this assertion has no basis in reality, given the overwhelming evidence of his involvement in the conspiracy.

Trader did not bring the following claims on appeal, no exception applies, and Trader cannot sufficiently prove cause or prejudice, thus the following claims are barred under § 2255: (1) his conviction and sentence are based upon insufficient evidence concerning the offenses of conspiracy to distribute 5 kilograms or more of cocaine as charged in Count One, distribution and aiding and abetting the distribution of cocaine as charged in Count Twenty-Two, and distribution and aiding and abetting the distribution of cocaine within 1000 feet of a

school as charged in Count Twenty-Three; (2) evidence of multiple conspiracies allowed for prejudicial evidence to be admitted to the trial; (3) a violation of the Sixth Amendment occurred because Trader was not allowed to confront and cross-examine witnesses; (4) the government's use of "fact" witnesses giving expert testimony was unduly prejudicial; (5) prosecutorial misconduct; (7) the "Cumulative Error Doctrine" requires that a new trial be granted; and (9) abuse of discretion of the District Court in allowing the lead case agents to sit at the prosecution's counsel table during trial. As shown below, even if one or more of these arguments could survive this procedural hurdle, they have no merit.

Ground Six, that is, ineffective assistance of counsel, will of course be addressed on its own merits as it falls squarely in the exception carved out in Massaro v. United States, 123 S.Ct. 1690 (2003).[5] This argument will fail on its merits in addition to all other arguments Trader advances.

Ground Eight, that is, the defendant's claim that his sentence of lifetime' imprisonment is unconstitutional based upon Alleyne v. United States, 133 S. Ct. 2151 (2013), is also barred as the Third Circuit has recently confirmed that the Supreme Court's 2013 decision in Alleyne does not apply retroactively to cases on collateral review. United States v. Thomas Reyes, --- F.3d ----, 2014 WL 2747216, C.A.3 (Pa.) (June 18, 2014). Not only is defendant barred from raising an Alleyne claim on collateral review, but even if he were permitted, it provides him with no relief.

---

[5] In Trader's lengthy submission, he repeats many of the claims that he attempts to make substantively, by claiming that his attorneys' failure to raise them at trial or on appeal was ineffective. In fact, none of the arguments have any merit, which was why counsel did not raise them at trial or on appeal. The government will address Ground Six at the conclusion of addressing all the grounds Trader raises.

**B.  Substantive Issues**

       **1.  Defendant Cannot Meet the Standard to Prove the Evidence was Insufficient.**

In Ground One, Trader claims the evidence presented at trial was insufficient to convict him of Count One (conspiracy to distribute 5 kilograms of more of cocaine)[6], Count 22 (distribution, and aiding and abetting the distribution of, cocaine), and Count 23 (distribution, and aiding and abetting the distribution of, cocaine within 1000 feet of a school).  Defendant cannot meet the standard to establish his claim, and moreover, this claim is contradicted by the voluminous and compelling evidence presented at trial.  This meritless claim, therefore, must be dismissed.

Regarding sufficiency of the evidence claims, Courts throughout the nation apply the "deferential standard" set out in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), stating that after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Id</u>. at 319. <u>See</u> <u>Johnson v. Louisiana</u>, 406 U.S.356, 362; <u>United Sates v. Voigt</u>, 89 F.3d 1050, 1080 (3d Cir1996); <u>United States v. Ozecik</u>, 527 F. 3d 88, 93 (3d Cir. 2008).

**i.  Quantity**

Courts throughout the nation as well as the Third Circuit apply the <u>Pinkerton</u> standard for conspiracy, stating that a defendant remains "liable for all reasonably foreseeable criminal offenses committed by his co-conspirators during the course of, and in furtherance of,

---

[6] As referenced above, defendant's claim that the government the government did not prove at trial the quantity of cocaine with which he should be held responsible under Count One was previously raised by Trader on appeal to the Third Circuit, and therefore should be dismissed.  <u>See</u> Trader Section 2255 brief, p. 22 (December 3, 2012); <u>See</u> <u>also</u> Trader 3d Cir. Brief, p. 3.

the drug conspiracy." United States v. Davis, 437 F. App'x 86, 88-89 (3d Cir. 2011). See Pinkerton v. United States, 328 U.S. 640, 646–48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

At trial, the government presented sufficient evidence to establish beyond a reasonable doubt that the conspiracy involved five kilograms or more of cocaine. The testimony concerning the conspirators' numerous purchases of cocaine from Smith supports the finding that the conspiracy involved at least five kilograms of cocaine. Green testified that he passed cocaine from Smith to Stillis from summer 2003 through late summer 2004. Supp. App 513. Stillis' first purchase of half a kilogram of cocaine from Green took place in summer 2003 in the presence of Defendant (as well as Rideout) in Philadelphia. Supp. App. 520-530. This distribution chain continued for the next year. Supp. App. 513, 531-533, 535, 538-43, 564, 569-72, 574-80.

Stillis went to Green for cocaine as often as once a week. Supp. App. 365-66, 516-17. The quantities varied from 4.5 ounces (125 grams), to one half kilogram. Supp. App. 576-77; 1206; 525. Using the lowest amount purchased, 4.5 ounces, throughout a 60 week conspiracy, the total amount of cocaine Stillis bought from Green alone would exceed 7.5 kilograms. The amount is likely understated as Wilson testified that Stillis sometimes bought larger quantities. And of course, in turn, Stillis' distributors, including Trader, distributed the cocaine.

The evidence also supported the finding that the quantity of cocaine that the organization distributed exceeded the amount that it purchased, because the cocaine was "stepped on" or "cut" (diluted) with Inositol or another substance by street level sellers. At trial, seller Richard Robinson ("Robinson") testified that the sellers at least doubled the weight of what Stillis gave them when cut. Supp. App. 853-54. Police corroborated this testimony by finding two bottles of Inositol, a chemical agent that dealers use to cut cocaine, in Wilson's car

19

when he was arrested on unrelated charges. Supp. App. 916. Also, when Stillis delivered 125 grams of cocaine to Trooper Miscannon on May 6, 2004, Stillis assumed that Miscannon would want to maximize his profit as a drug dealer.  Stillis suggested that Miscannon "put a one on" the 4.5 ounces of cocaine meaning that Miscannon could double the volume of the cocaine by "cutting" it one to one with an equal amount of an inert chemical agent like Inositol. Supp. App. 227.  Thus, although the testimony about the amount of cocaine that Smith supplied to the conspiracy would in and of itself support a finding that the conspiracy distributed more than five kilograms of cocaine, the evidence suggests that the amount of the mixture or substance containing cocaine that the conspiracy ultimately distributed was well in excess of five kilograms.

Alternatively, the quantities that the individual sellers received from Stillis also show the volume that the conspiracy distributed. Wilson testified that he received about one ounce per week from Stillis for 15 months. Supp. App. 303. Robinson testified that he replenished his cocaine inventory once every one or two weeks, receiving somewhere between a "ball game" (3.5 grams) to two ounces from Stillis.  Supp. App. 789.  Evidence showed that Stillis expected Trader to sell one ounce per week and Stillis berated the defendant when he did not meet his quota. Supp App. 1139.  The evidence established at trial showed that Rideout and Davis sold quantities of cocaine as well and that Stillis retained a certain amount to sell himself.

Lastly, adding the quantities of cocaine from the individual transactions testified to at trial gives an illustration, albeit incomplete, of the amount of cocaine the conspiracy distributed.  Many users bought cocaine in increments ranging from $20 per quarter gram, or "Twinkies," to $150 per 3.5 grams, or a "ball game."

The quantities of cocaine most precisely measured are sales to undercover state troopers. On July 15, 2004, Stillis and Defendant sold Trooper Miscannon 9 ounces (244 grams) for $4,200. Supp. App. 234-41. Other conspirators sold Troopers 230 grams of cocaine from August 6, 2003 through May 6, 2004. Supp. App. 168-78; 198-202; 189-98; 202-05; 222-27.

Just this handful of sales to undercover officers amounted to nearly a half-kilogram of cocaine, hinting at the bulk this conspiracy was ultimately able to move. And of course, only a fraction of the drug sales distributed by the conspirators were to undercover officers. Of the drug users in the community who bought cocaine from the conspiracy, only a few testified at trial, giving calculated estimates of the quantities they regularly purchased which also corroborated the broader evidence.

For example, David Wilkins bought cocaine from Stillis once or twice a week for six to eight months, sometimes buying a "20," or a quarter-gram costing $20. Supp. App. 431-31; 1106-07. Wilkins also bought from Defendant about six or seven time. Supp App. 436-37. Eric Savercool purchased from several conspirators and the Defendant was recorded via wiretap discussing those purchases with other conspirators. Supp. App. 470-75; 1178; 1185-86; 1204-05. Another user purchased from Defendant fifteen times and at least one hundred times from other conspirators. Supp. App. 723-24. Sandra Collins also purchased drugs from Defendant at least 20 times as well as over a hundred times from other conspirators. Supp. App. 752-54. Alicia Czukiewski purchased from Stillis and Defendant 19 or 20 times. Supp. App. 646-47.

Thus, just these few customers testified that they were regularly, often daily, able to buy quarter-grams, half-grams, full grams, and larger quantities. Users testified to hundreds of such transactions in a short period of time. This evidence corroborated the larger picture painted by Green of a conspiracy which dealt in many kilograms of cocaine, certainly more than five.

In arguing otherwise, Trader simply isolates transactions and remains in denial of the jury's ability to draw reasonable inferences from the evidence. In light of all of this overwhelming evidence, the jury's finding of the quantity of cocaine was amply supported. The jury could (and did) reasonably find that the government proved beyond a reasonable doubt that the defendant was part of a conspiracy that distributed five kilograms or more of cocaine.

The application of <u>Pinkerton</u> provides that the actions of a conspirator or many conspirators make all those involved in the conspiracy responsible for the crimes committed in furtherance of their agreement. <u>Pinkerton</u> liability eviscerates the defendant's insufficiency of the evidence claim regarding the quantity of cocaine as Trader remains liable for whatever quantity the conspiracy distributed as a whole as long as it was reasonably foreseeable to him. Considering defendant's conspiratorial relationship with Stillis, it was reasonably foreseeable to defendant that the conspiracy involved five kilograms or more of cocaine. Accordingly, the evidence produced at trial proved that defendant conspired to distribute five kilograms or more of cocaine. Supp. App. 520-525, 241. Trader did not need to personally distribute or know of the actual distribution of five kilograms or more of cocaine to be convicted, thus defendant's argument remains based solely in the misapplication of law and should not prevail.

## ii. Aiding and Abetting

Trader asserts in Ground One, in addition to his claim of insufficient evidence of his participation in the conspiracy to distribute 5 kilograms or more of cocaine, that there was insufficient evidence to convict him of distribution, and aiding and abetting the distribution of, cocaine as charged in Count 22, and distribution, and aiding and abetting the distribution of, cocaine within 1000 feet of a school as charged in Count 23. His discussion, however, addresses only Count 23.

Regarding aiding and abetting, "the government must prove [beyond a reasonable doubt]: (1) that the substantive crime has been committed; and (2) that the defendant charged with aiding and abetting knew of the commission of the substantive offense and acted with intent to facilitate it." United States v. Petersen, 622 F.3d 196, 208 (3d Cir. 2010) quoting United States v. Soto, 539 F.3d 191, 194 (3d Cir.2008).  Additionally, "The government must also prove that the defendant had the specific intent of facilitating the crime . . . mere knowledge of the underlying offense is not sufficient for conviction." Id.  Specific intent requires "the additional deliberate and conscious purpose of accomplishing a specific and prohibited result." Pierre v. Att'y Gen., 528 F.3d 180, 189 (3d Cir.2008).

In United States v. Soto, the defendant accompanied his girlfriend on the straw purchases of handguns knowing that the guns were to be resold and that he would receive some of the proceeds from resale value of the weapon. 539 F.3d 191, 194 (3d Cir.2008). Soto's conviction survived an appeal on which the sufficiency of the evidence of his aiding and abetting charge was questioned. Id. at 194-195.

In United States v. Cartwright, the defendant succeeded on appeal because "there [was] simply no evidence in this record from which to infer a conclusion that Cartwright had knowledge of the nature of the transaction." 359 F.3d 281, 290 (3d Cir. 2004).  The defendant appeared to associate with a known drug dealer while under surveillance.  Immediately following the arrest of the drug dealer, the defendant appeared to walk quickly into a store where a gun and several other items appeared to corroborate the defendant's involvement in the drug transaction. Id. at 283-286.  The defendant was convicted at trial but his conviction was overturned on appeal because the court held that the evidence that provided the basis for his appeal appeared too speculative on which to base a conviction. Id. 291-292.

Here, like <u>Soto</u> and unlike <u>Cartwright</u>, there exists overwhelming evidence that Trader had precise and explicit knowledge of the circumstances providing a basis for his charges. As previously stated, defendant distributed the cocaine provided by Stillis. Supp. App. 520-525. Furthermore, Miscannon testified that during the course of the nine ounce sale of cocaine on July 15, 2004, by Stillis and Trader, Trader advised Miscannon of the superior quality of the cocaine, which alone suffices to establish the "knowing" threshold to establish his role in aiding and abetting the transaction. Supp. App. 241.

## 2. Defendant's Claim of Multiple Conspiracies is without Basis

Trader's Ground Two is based upon the allegation that the government introduced evidence at trial that pointed to multiple conspiracies as opposed to a single conspiracy, and therefore, the Court improperly admitted evidence at trial regarding cocaine suppliers Tyrone Smith and William Green, thereby prejudicing defendant. Defendant, once again, misreads the law, misapplies the facts, and ignores the record.

The elements of a charge of conspiracy are: "an agreement, either explicit or implicit, to commit an unlawful act, combined with intent to commit an unlawful act, combined with intent to commit the underlying offense, may be proven entirely by circumstantial evidence." <u>State v. Kapp</u>, 781 F.2d 1008, 1010 (3d Cir.1986); <u>see also</u> <u>United States v. Applewhaite</u>, 195 F.3d 679, 683 (3d Cir.1999) citing <u>United States v. McGlory</u>, 968 F.2d 309, 321 (3d Cir.1992). Indirect and circumstantial evidence can be utilized as evidence of a conspiracy because "secrecy and concealment are essential features of successful conspiracy." <u>Blumenthal v. United States</u>, 332 U.S. 539, (1947). The government does not have to prove that a defendant committed all of the acts necessary for an offense, but rather the existence of a conspiracy or agreement to commit those acts. <u>Id.</u> <u>See also</u> <u>United States v. Perez</u>, 280 F.3d 318,

342 (3d Cir.2002).  Furthermore, courts require that the defendant agreed with at least one, *not all*, indicted conspirators.   United States v. Kelly, 892 F.2d 255, 259 (3d Cir. 1989).  The government must offer evidence that a defendant knew the essential nature of the plan and was connected with the plan, even if the defendant did not know all of the details of the plan, or the other participants in the plan.  United States v. Gibbs, 190 F.3d 188, 197 (3d Cir.1999).

The issue of whether a single conspiracy or multiple conspiracies exist remains a fact question to be decided by a jury. United States v. Curran, 20 F.3d 560, 572 (3d Cir. 1994). At trial or on appeal the defendant carries the burden in showing that "first, that there was such a variance [that multiple conspiracies occurred rather than one] and, second, that the variance prejudiced one of his substantial rights." United States v. Quitero, 38 F.3d 1317, 1337 (3d Cir. 1989).  Moreover, there exists a strong presumption that courts must sustain the jury's verdict if there is substantial evidence, viewed in the light most favorable to the government, to support a finding of a single conspiracy.  Glasser v. United States, 315 U.S. 60, 62 (1942).  See United States v. Smith, 789 F.2d 196, 200 (3d Cir. 1986).

The Third Circuit employs a three step analysis in determining whether one or multiple conspiracies exist in an indictment in United States v. Kelly. 892 F.2d 255, 259 (3d Cir. 1989).  First, the Court examines whether there was a common goal among the conspirators. Id. Second, the Court looks at the nature of the scheme to determine whether "the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators." Id., quoting United States v. Perez, 489 F.2d 51, 62 (5th Cir. 1973).  Third, the Court examines the extent to which the participants overlap in the various dealings. Id. See also United States v. Russell, 134 F.3d 171, 182 (3d Cir. 1998).  But see United States v. Padilla, 982 F.2d 110, 115 (3d Cir. 1992) (Noting "that the Kenny factors are most

useful to show the existence of a single conspiracy, that the absence of one factor does not necessarily defeat an inference of the existence of a single conspiracy.").  Multiple conspiracies exist instead when "separate networks operat[e] independently of each other."  United States v. Barr, 963 F.2d 641, 648 (3d Cir. 1992).

In Kapp the court held that an implicit agreement was not established when Kapp received fraudulent paperwork in purchasing a vehicle but an agreement *was* established when Kapp provided another set of fraudulent documents to the subsequent owner of the same vehicle. Kapp, 781 F.2d at 1010-11.  Here, the Court need not even employ this attenuated circumstantial rationale.  Early on in the conspiracy, Trader drove Green and Stillis to Philadelphia to purchase approximately a half-kilogram of cocaine from Tyrone Smith.  Supp. App. 520-528. Furthermore, Trader witnessed, facilitated, and aided in the selling of cocaine on numerous instances. Supp. App. 241.  Defendant even allowed Stillis to use his home as a place to store and cut the cocaine. Supp. App. 366-67.  The facts show that Trader did in fact arrive at an agreement with other conspirators to distribute cocaine and did commit the unlawful act. Furthermore, trial testimony suggests that defendant knew of other parties and the supply chain that provided him with the controlled substance.

Importantly, during the course of the Court's charge to the jury, this Court advised the sitting jurors that the defendant contended the government had failed to prove the existence of an overall conspiracy and rather that there were either multiple conspiracies at play and/or that the defendant was not a member of the conspiracy.   Court's Charge to Jury, January 18, 2007, 72-74.  The jury verdict is not only amply supported by the trial evidence, but they clearly rejected the defendant's multiple conspiracy argument and found that there was a single

conspiracy, that the defendant was a member of it, and that he conspired to distribute five kilograms or more of cocaine.

Defendant attempts to suggest that at his sentencing hearing, when this Court referred to a "Stillis led" conspiracy, that conclusively proved that he could only be held responsible for the cocaine distributed by Stillis and his distributors. He is once again mistaken. Though the Court referred to Stillis' leadership role, as Stillis was Trader's cocaine supplier, this does not by any stretch of the imagination mean that there were multiple conspiracies. Contrary to this, the facts presented at trial proved that one conspiracy existed—from Smith to Green, Green to Stillis, and Stillis to several street level dealers including Trader. Supp. App. 505-09. Indeed, the facts presented neatly fit the <u>Kelly</u> test for a single conspiracy. Trader, Stillis, Green and Smith had the common goal of selling cocaine. Trader relied on the performance of Stillis, who relied on the performance of Green, who relied on the performance of Smith, and all relied on the performance of the distributors like the defendant to market the cocaine and reap the proceeds. Lastly, the relationship of the conspirators turned on the cocaine distribution. Unlike the <u>Barr</u> case, here there was nothing to suggest the existence of multiple conspiracies. <u>United States v. Barr</u>, 963 F.2d 641.

**3. Defendant's 6th Amendment right to confront witnesses were not violated as defendant misapplies the law concerning fact and expert witnesses.**

In his third and fourth claim of error, defendant asserts that his 6th Amendment right to confront his witnesses was violated alleging that non-expert witnesses were allowed to testify as experts. Once again, he is simply wrong and his claim should be dismissed as meritless.

"Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Crawford v. Washington, 541 U.S. 36, 59 (2004). In reaching this decision, the Supreme Court relied on the United States Constitution's Sixth Amendment's Confrontation Clause. The holding in Melendez-Diaz v. Massachusetts has advanced the understanding of the application of the Sixth Amendment's Confrontation Clause. 557 U.S. 305, (2009). In Melendez-Diaz, a 2009 decision, the Court found that affidavits that asserted that the defendant possessed cocaine of a certain weight, as the prosecution claimed, fell within the "core class of testimonial statements" covered by the Confrontation Clause. Melendez-Diaz, 557 U.S. at 310-11 quoting Crawford 541 U.S. at 54. Thus, the admission of the certificates violated a defendant's Sixth Amendment right to confront the witnesses against him because the defendant maintained the right to "be confronted with" the persons giving this testimony at trial. Melendez-Diaz, 557 U.S. at 310-11.

In Bullcoming v. New Mexico, 131 S. Ct. 2705, 2714, (2011), the United States Supreme Court overturned New Mexico's Supreme Court holding that surrogate testimony sufficed the Confrontation Clause because the person responsible for testing "simply transcribed the resul[t] generated by the gas chromatograph machine" of the defendant's DUI and presented no interpretation and exercised no independent judgment.

Trader only cites to a small portion of the record as an example of a purported Crawford violation, though he asserts that "many instances" occurred which violated his Sixth Amendment rights. The Government's careful review of the record could not locate any such instances. Defendant only points to the following instance as a violation of the Crawford standard:

Ms Stark: And what is Government Exhibit Number 54?

Miscannon: It's a report of drug property collected. Which is basically a lab report from the Drug Enforcement Administration.

Ms. Stark: And with respect to the weight of the controlled substance contained in Government Exhibit 54, and the content of the controlled substance, what was the content of the controlled substance?

Miscannon: The active ingredient of cocaine, hydrochloride.

Trial Transcript, January 8, 2007, 20-21.

This case is unlike <u>Bullcoming</u> as Miscannon's testimony did not serve as a surrogate for another's testimony. Trooper Miscannon was an undercover officer who testified about purchasing cocaine from defendant. Miscannon's testimony related to the cocaine purchase, the field test, and the results of the laboratory test of the cocaine he purchased from defendant. He did not testify as to the processes of the test or the accuracy—merely that the report generated corresponded with cocaine he purchased from defendant. Trader misapplies the Federal Rules of Evidence by suggesting that officers are not qualified to render conclusions from forensic examinations of confiscated substances. Miscannon's testimony remained within the province of factual testimony. He did not offer testimony concerning specific testing procedures—simply that the tests and conclusions corresponded with the evidence Miscannon recovered. Furthermore, it cannot be said that a <u>Crawford</u> violation occurred as opposing counsel had the opportunity to, and did in fact, cross examine Trooper Miscannon at trial, therefore no violation of the Sixth Amendment Confrontation occurred in this instance. Trial Transcript, January 8, 2007, 36 - 56.

Most importantly, however, defendant's claim is belied by the fact that the conclusions of the lab report referred to by Trooper Miscannon were stipulated to by the defendant. During the course of trial, Assistant United States Attorney Stark read into the record a stipulation that had been signed by the defendant and defendant's counsel prior to trial. The stipulation read:

> The defendants and Government agree that the substances obtained by the Pennsylvania State Police and/or the Drug Enforcement Administration and analyzed pursuant to the lab report numbers set forth below, confiscated on the dates noted, contain a detectable amount of Schedule II controlled substance, namely cocaine. And weighed the amounts indicated below within the meaning of Title 21, United States Code, Sections 841 (a) and (b), Section 846 and Section 860 . . . . The defendants and Government agree and stipulate that this stipulation and its attachments are admissible in evidence without the necessity of calling the individual chemists to verify the chemical composition and the weights of the substances listed above.

Trial Transcript, January 12, 2007, 153–155. Given the stipulation, defendant has no basis for his claim that a violation of his Sixth Amendment Right to cross examine witnesses concerning the lab reports occurred and the methods of testing which generated the lab reports.

With regard to defendant's Ground Four claim that Trooper Skahill impermissibly testified as an expert as opposed to a fact witness at trial, once again, defendant misstates the facts. At a sidebar prior to Trooper Skahill's testimony, Judge DuBois stated that "I think to simplify matters, we will permit him [Skahill] to testify as a fact witness, not as an expert witness." Trial Transcript, January 5, 2007, 28. Trooper Skahill testified about surveillance that he conducted with the assistance of a confidential informant. He testified as to the information gained through surveillance. Once again, defense had the opportunity to (and did) cross examine the witness. These circumstances should eviscerate any claim based on the Crawford/Melendez-Diaz line of cases. Secondly, after careful review of the record in concert with Judge DuBois's

instruction, neither Trooper Skahill's testimony nor any non-expert' testimony breached any of the evidentiary rules argued by defendant.

### 4. There Exists no Legitimate Basis for Defendant's Claim of Prosecutorial Misconduct

In Ground Five, Trader alleges prosecutorial misconduct occurred, thereby entitling him to a new trial. Contrary to defendant's assertions, there was no misconduct, and his conviction must stand.

Prosecutorial misconduct occurs when the prosecutor employs "arguments calculated to inflame the passions or prejudices of the jury." ABA Standards for Criminal Justice 3-5.8(c) (2d ed. 1980); See Berger v. United States, 295 U.S. 78, 88, (1935); Darden v. Wainwright, 477 U.S. 168, 192 (1986). Specifically, the issue focuses on whether the alleged misconduct was "sufficiently prejudicial" to violate a defendant's due process rights. United States v. Bates, 46 F. App'x 104, 110 (3d Cir. 2002). See United States v. Scarfo, 685 F.2d 842, 849 (3d Cir.1982).

In Bates the prosecutor spoke about an unrelated incident in which the defendant allegedly killed a homeless person and the effects of the conviction on the respective police departments and local governments.[7] Bates, 46 F. App'x at 110-113. The court held that these statements did not amount to prosecutorial misconduct. Id. Numerous examples of misconduct exist in other Circuits. (See United States v. Mannava, 565 F.3d 412 (7th Cir. 2009) (prosecutor's repeated harping at trial on theme that defendant had been attempting to "rape" a 13-year-old "was undoubtedly trying to inflame the jury"); United States v. Crooks, 83 F.3d 103 (5th Cir. 1996) (prosecutor asks jury to stop defendant drug dealer from preying on young children during

---

[7] Referring to the Virgin Island Police Department and Government.

Christmastime); <u>Miller v. Lockhart</u>, 65 F.3d 676 (8th Cir. 1995) (prosecutor refers to victim's family wanting death verdict; suggests, without support in evidence that defendant escaped from jail before, and bemoans unfair burden that life imprisonment places on taxpayers); <u>United States v. Payne</u>, 2 F.3d 706 (6th Cir. 1993) (prosecutor refers to plight of poor children, pregnant women, diaperless babies, corporate layoffs, and Christmastime in postal-theft prosecution).

Though the defendant suggests there are several instances where prosecutorial misconduct occurred, an analysis of excerpts cited by Trader[8] as well as the government's careful review of the record show the record is void of any prosecutorial misconduct. The instances the defendant chooses to cite merely show basic interactions between the Court, the prosecutor, and the defense. The record is void of instances that even come close to resembling the standard set out by <u>Bates</u>, 46 F. App'x at 110, that is misconduct "sufficiently prejudicial" to violate a defendant's due process rights. <u>Id.</u>

Trader claims the following represent instances of prosecutorial misconduct: a witnesses' reference to gun purchases, eliciting hearsay, the search and seizure of "inadmissible" contraband, a "blank" exhibit list, an "inadmissible" post-arrest interview of Trader, an "unauthenticated" voice identification of Trader, and testimony of "dual" witnesses. Trader not only misconstrues the standard necessary to establish prosecutorial misconduct, but his recitation of record is factually wrong.

During the course of a lengthy two-week trial, Trader cites to six[9] instances of purported "prosecutorial misconduct." During the course of testimony by Trooper Skahill

_____

[8] These instances appear to be inadvertently listed under Ground Four of Trader's petition. Trader Section 2255, p. 38, December 3, 2012.
[9] Trader seventh claim of purported misconduct is "the prosecution improperly elicited law enforcement officers as dual witnesses[.]" As this is the same ground raised under defendant's Ground Six, the government has addressed the "dual witness" complaint under Trader's Ground Six claim of error.

regarding how the investigation into this cocaine trafficking organization commenced, and referenced the fact that members of the Pennsylvania State Police began making purchases of cocaine and firearms. Supp. App. 20. Upon objection by one of the four defendants' defense counsel, this Court sustained the objection, and instructed the jury to disregard the testimony regarding the firearms. Supp. App. 20-21, 41. The jury is presumed to follow Court's instruction to disregard inadmissible evidence "unless there is an overwhelming possibility that the jury will be unable to follow the court's instructions ... and a strong likelihood that the effect of the evidence would be devastating to the defendant," See U.S. v. Thomas, 315 F.3d 190, 203 (3d Cir. 2002), quoting Greer v. Miller, 483 U.S. 756, 766 n.8 (1987)). The presumption is therefore, that the jury did indeed follow the Court's instruction. Even if the testimony was improperly admitted initially, there was no prejudice to Trader. This elicited testimony hardly rises to the level of "prosecutorial misconduct" intended to "inflame the passions or prejudices of the jury." ABA Standards for Criminal Justice 3-5.8(c) (2d ed. 1980).

The same holds true for Trader's argument regarding hearsay testimony. Supp. App. 78. The Court instructed the jury to disregard the hearsay testimony and struck it from the record. Supp. App. 78. Again, the jury is presumed to follow the Court's instruction.

Trader's reference to the government improperly eliciting testimony regarding the "confiscation of contraband from a residence uninvolved in the charged offenses" is factually incorrect and belied by the record. Trader Section 2255 Pet., p.9. The government elicited testimony regarding the results of a search warrant executed at the residence of Tyrone Smith, one of the cocaine suppliers to this conspiracy. Supp. App. 80-84. The Court appropriately overruled defense counsel's objection, and allowed the government to elicit testimony regarding the numerous items seized from the cocaine supplier's residence, such as two and a half

kilograms of cocaine, numerous empty kilogram wrappers of cocaine, money counters, and owe sheets, to list but a few. Supp. App. 89. Again, a claim of prosecutorial misconduct with respect to this elicited testimony is inappropriate and must be dismissed.

Trader's complaint that "the government submitted a blank exhibit list," is similarly, simply wrong. Trader Section 2255 Pet., p. 9. Trader refers to an instance in a two week trial where the government marked an exhibit during the course of trial that had previously been unmarked. As defense counsel noted on the record at the time of the admission of the exhibit, they were aware of the existence of the exhibit being marked (empty kilogram wrappers of cocaine) and had been provided a list of what had been seized. Supp App. 92. Accordingly, the Court appropriately overruled defense counsel's objection. Supp. App. 93.

Trader claims that the government improperly elicited testimony regarding post arrest interview of Trader and that the government improperly attempted to authenticate Trader's voice. The government elicited testimony from Trooper Skahill regarding the fact that Trader, like many of the other defendants, was arrested on October 6, 2004, and that at the time of his arrest, Trooper Skahill had the opportunity to speak to the defendant. Trooper Skahill further testified that based upon this conversation, he recognized that the voice of Tyrone Trader as being the voice of the person intercepted recordings during the course of the Title III wiretap. Supp. App. 99-101, 106. Defense counsel objected to elicited testimony regarding the defendants being given the opportunity to cooperate, and the Court sustained that objection, and instructed the jury to disregard the witness's testimony regarding the subject matter, but that they could consider the witness's ability to recognize the voice of the defendant on any tape recorded conversations. Supp. App. 101-105. Again, Trader's claim of prosecutorial misconduct is meritless. Importantly,

34

Assuming *arguendo* that any purported instances of "misconduct" occurred, they certainly do not rise to the level of prosecutorial misconduct. They are neither "arguments calculated to inflame the passions or prejudices of the jury[,]" (ABA Standards for Criminal Justice 3-5.8(c) (2d ed. 1980)), nor are they "sufficiently prejudicial" to violate a defendant's due process rights. Bates, 46 F. App'x at 110. Unlike instances of prosecutorial misconduct that typically involve statement/arguments made by the prosecutor during opening or closing statements, the instances cited by Trader, are common interactions between the Court and counsel. They certainly were not so inflammatory as to deprive the defendant of due process.

### 5. Defendant Cannot Satisfy the Standard for a Claim of Cumulative Error.

In Ground Seven of his claim, Trader maintains he should be granted a new trial under the "Cumulative Error Doctrine." "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Darks v. Mullin, 327 F.3d 1001, 1018 (10th Cir.2003). To obtain relief under 28 U.S.C. § 2255, a defendant must show a "constitutional trial error [that] 'had substantial and injurious effect or influence in determining the jury's verdict.'" Hassine v. Zimmerman, 160 F.3d 941, 950 (3d Cir. 1998) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)). Under this "actual prejudice" standard, Brecht, 507 U.S. at 637, a constitutional error is "not harmless if the court is in 'grave doubt' as to whether the error had a substantial and injurious effect." Hassine, 160 F.3d at 955. In making this determination, this Court looks at the "record as a whole," including the weight of the evidence otherwise admitted, Brecht, 507 U.S. at 638-39, and the "case as presented to the jury by the

prosecution and the defense," United States v. Montalvo, 331 F.3d 1052, 1058-59 (9th Cir. 2003), to determine if the error substantially influenced the jury's verdict. In determining whether there has been a constitutional trial error, this Court looks at clearly established law at the time the defendant's conviction became final. See Williams v. Taylor, 529 U.S. 362, 380 (2000). "Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas defendant is not entitled to relief based on cumulative errors unless he can establish '"actual prejudice."'" Albrecht v. Horn, 485 F.3d 103, 139 (3d Cir. 2007) quoting Brecht, 507 U.S. at 637, 113 S.Ct. 1710. See Whitney, 280 F.3d at 258-59 & n.18 ii. United States v. Copple, 24 F.3d 535, 547 n.17 (3d Cir. 1994). Herrera-Genao, 419 Fed. Appx. at 292 (holding that unraised claims receive plain error review).

The Third Circuit has established a high hurdle for successful cumulative error claims. In United States v. Powell, 444 F. App'x 517 (3d Cir. 2011) (non-precedential) cert. denied, 132 S. Ct. 1907, 182 L. Ed. 2d 777 (U.S. 2012), the Third Circuit found that "[t]he cumulative effect of each non-error does not rise to constitutional error; as the saying goes, zero plus zero equals zero. Powell at 522. In United States v. Chirstie, 624 F.3d 558 (3d Cir. 2010), where the Court found a harmless error did occur, in view of the "overwhelming evidence of guilt," the court "readily conclude[d] that, taken together, the purported errors do not entitle Christie to a new trial." Id. at 572.

As in Powell, the defendant does not establish a legitimate basis for any sort of error on the claims brought in his petition. Even if error occurred, Christie provides that where overwhelming evidence of guilt exists, a handful of harmless errors do not contravene the Sixth Amendment. Trial can withstand a handful of errors as long as the evidence remains strong. Here, no errors occurred, and even if an error did in fact occur, the overwhelming evidence of

Trader's guilt eviscerates a claim of prejudice brought by a handful of insignificant errors as in Christie.

### 6. Defendant's Sentence was Lawful

In Ground Eight, defendant claims is his lifetime sentence of imprisonment is unconstitutional based upon Alleyne v. United States, 133 S. Ct. 2151 (2013). Like defendant's other claims of error, this too lacks merit.

A stated above, the Third Circuit has recently confirmed that the Supreme Court's 2013 decision in Alleyne does not apply retroactively to cases on collateral review. United States v. Thomas Reyes, --- F.3d ----, 2014 WL 2747216, C.A.3 (Pa.) (June 18, 2014). Hence, Trader barred from raising an Alleyne claim on collateral review.

Even if Trader were permitted to raise a claim under Alleyne, it provides him with no relief. Defendant argues that since his mandatory minimum sentence was increased from 10 years to lifetime' imprisonment as a result of two prior felony drug trafficking convictions, a jury should have made findings regarding these prior convictions. This conclusion is a clear misapplication of the law. Alleyne held that, *other than a prior conviction*, any fact that triggers or increases a mandatory minimum sentence must be submitted to a jury and proved beyond a reasonable doubt. Id. Accordingly, it would have been improper for the issue of the defendant's prior convictions to be submitted to the jury.

Here, the jury was asked to determine the quantity ranges stated in the statute, 21 U.S.C. § 841(b)(1), as required in order to establish the statutory maximum penalty, see Apprendi v. New Jersey, 530 U.S. 466 (2000), and any mandatory minimum penalty, see Alleyne v. United States, 133 S. Ct. 2151 (2013). The jury specifically made a finding under Count One's conspiracy to distribute cocaine, regarding the quantity of cocaine that was

attributable to the each defendant, that is, 5 kilograms or more, under Title 21, United States Code, Section 846. As a conviction for this offense yields a statutory maximum of lifetime imprisonment, <u>Alleyne</u> is applicable. <u>See</u> Title 21, U.S.C., Section 841(a)(1), (b)(1)(A). <u>See</u> <u>Alleyne v. United States</u>, 133 S.Ct. 2151, 2158 (2013) (holding that, other than a prior conviction, any fact that triggers or increases a mandatory minimum sentence must be submitted to a jury and proved beyond a reasonable doubt); <u>United States v. Blair</u>, 734 F.3d 218, 227-28 (3d Cir. 2013), (<u>Alleyne</u> did "nothing to restrict the established exception under <u>Alemendarez-Torres</u> that allows judges to consider prior convictions" for purposes of enhanced penalties). Accordingly, the Court's determination that the defendant had two prior felony drug trafficking convictions,[10] that yielded a mandatory minimum sentence of life, was appropriate, and defendant's claim must be dismissed.

### 7. The Trial Court did not Abuse its Discretion

In his Ninth claim of error, Trader asserts that that the District Court abused its discretion by allowing the lead case agents to sit at the prosecution's counsel table during trial, arguing that since they were witnesses at trial, they should have been sequestered. As this Court committed no error, and all authority stands against this view, defendant's assertion in this regard is baseless and should be dismissed.

Federal Rule of Evidence 615 states that "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney" shall not be excluded from the courtroom. Fed. R. Evid. 615(b). Because Trooper Skahill was officer of the Pennsylvania State Police and one of the case agents whom the government designated as its

---

[10] The defendant did not challenge the fact that he had two qualifying felony drug trafficking convictions at the time of his sentencing hearing, nor does he do so in his Section 2255 Petition. Trader Sentencing Hrg., September 29, 2008, p. 6.

representative, he could not be excluded from the courtroom. See United States v. Gonzales, 918 F.2d 1129, 1137-38 (3d Cir. 1990) (compiling cases holding that "the government case agent responsible for a particular investigation should be permitted to remain in the courtroom, even though the agent will often testify later on behalf of the government. Such an exception is envisioned by Rule 615(2), and it is further supported by legislative history."). See also United States v. Strauss, 473 F.2d 1262 (3d Cir. 1973).

The legislative history squarely supports the government's right to designate an agent to be present to assist during trial. The Senate committee which approved Rule 615 stated:

> Many district courts permit government counsel to have an investigative agent at counsel table throughout the trial although the agent is or may be a witness. The practice is permitted as an exception to the rule of exclusion and compares with the situation defense counsel finds himself in -- he always has the client with him to consult during the trial. The investigative agent's presence may be extremely important to government counsel, especially when the case is complex or involves some specialized subject matter. The agent, too, having lived with the case for a long time, may be able to assist in meeting trial surprises where the best-prepared counsel would otherwise have difficulty. Yet, it would not seem the Government could often meet the burden under rule 615 of showing that the agent's presence is essential. Furthermore, it could be dangerous to use the agent as a witness as early in the case as possible, so that he might then help counsel as a nonwitness, since the agent's testimony could be needed in rebuttal. Using another, nonwitness agent from the same investigative agency would not generally meet government counsel's needs.
>
> This problem is solved if it is clear that investigative agents are within the group specified under the second exception made in the rule, for "an officer or employee of a party which is not a natural person designated as its representative by its attorney." It is our understanding that this was the intention of the House committee. It is certainly this committee's construction of the rule.

S. Rep. No. 1277, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Admin. News 7051, 7072-73. Accordingly, the Court in this case properly permitted the case agents to remain in the courtroom.

## 8. Ineffective Assistance of Counsel

The applicable standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The Supreme Court in <u>Strickland</u> held that a claim of ineffective assistance of counsel requires a showing that defense counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance. The first part of the test requires Trader to show that counsel's performance fell below an objective standard of reasonableness as defined by the prevailing professional norms, such that the Defendant was effectively denied the "counsel" guaranteed by the Sixth Amendment. <u>Id.</u> at 687. In applying the "professional norms" standard, "judicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. To be entitled to relief, Trader must also show that counsel's unprofessional errors actually prejudiced him. <u>Id</u>. at 687. In order to satisfy the prejudice component, the defendant must show that "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694. Defendant cannot meet this high burden.

In Ground Six, Trader bases his claim of ineffective assistance of counsel on trial counsel's failure to argue the sufficiency of the evidence, failure to object to the counts of aiding and abetting, and failure to argue multiple conspiracies. As analyzed above, these claims have no merit and therefore, cannot rise to the level of ineffective assistance of counsel. Contrary to defendant's claims, both trial and appellate counsel argued sufficiency of the argument. Trial counsel did object to the counts of aiding and abetting, Supp. App. 973-974, and finally, the Court gave a charge to the jury with respect to multiple versus a single conspiracy. Court's

Charge to Jury, January 18, 2007, 72-74.  Additionally, defense counsel's unwillingness/reluctance to raise frivolous arguments and issues functions as an illustration of prudent and thoughtful advocacy—not ineffective counsel.  Counsel cannot be ineffective for a failure to raise an issue that lacks merit.  <u>Government of Virgin Islands v. Lewis</u>, 620 F.3d 359, 372 (3d Cir. 2010);  <u>Real v. Shannon</u>, 600 F.3d 302, 309 (3d Cir. 2010); <u>Werts v. Vaughn</u>, 228 F.3d 178, 202 (3d Cir. 2000); <u>Parrish v. Fulcomer</u>, 150 F.3d 326, 328 (3d Cir. 1998).

Defendant also argues his claim of ineffective assistance of counsel due to counsel's failure to object to a <u>Crawford</u> violation.  Trader's present argument appears to focus on the testimony of law enforcement officers throughout trial.  Defendant misapplies <u>Crawford</u> as Trader's trial counsel had the opportunity to, and did, cross examine the witnesses.  Thus, as argued above, no <u>Crawford</u> violation occurred.  Furthermore, careful review of the record does not reveal any such instance.  Similarly, Trader argues his counsel was ineffective by failing to object to the "dual" testimony of law enforcement officer.  As argued above, there is no merit to this claim.  Law enforcement officers testified as fact witnesses concerning their observations.  They did not testify concerning laboratory testing, the process of laboratory testing, or the accuracy of laboratory tests.  Moreover, at sidebar, defendant's counsel, the government, and the Court collectively agreed that the law enforcement officer's testimony, specifically Trooper Skahill's testimony with which defendant takes umbrage, would be limited to fact, rather than expert, testimony.  Trial Transcript, January 5, 2007, 28.  The record reveals no instances of expert opinion offered by Trooper Skahill.

Additionally, defendant argues his claim of ineffective counsel due to counsel's failure to object to prosecutorial misconduct.  As set forth above, no incidents of prosecutorial misconduct occurred, rather has cited routine interactions before the Court that were properly

handled and do not rise to the level of prosecutorial misconduct.  On occasions where the Court

sustained an objection made by defense counsel, where appropriate, a cautionary or limiting

instruction was given to the jury.  In short, a review of the record reveals no misconduct by the

prosecution.

Lastly, Trader argues that his counsel's failure to object to the timing of the filling

of the 21 U.S.C. § 851 notice amounted to ineffective assistance of counsel, claiming the filing

of the notice evidences "vindictive" intent on the part of the government.  Title 21, United States

Code, § 851 states that:

> (1) No person who stands convicted of an offense under this part shall be
> sentenced to increased punishment by reason of one or more prior convictions,
> unless before trial, or before entry of a plea of guilty, the United States attorney
> files an information with the court (and serves a copy of such information on the
> person or counsel for the person) stating in writing the previous convictions to be
> relied upon. Upon a showing by the United States attorney that facts regarding
> prior convictions could not with due diligence be obtained prior to trial or before
> entry of a plea of guilty, the court may postpone the trial or the taking of the plea
> of guilty for a reasonable period for the purpose of obtaining such facts. Clerical
> mistakes in the information may be amended at any time prior to the
> pronouncement of sentence.

21 U.S.C.A. § 851 (West).

Once again, defendant's claim is baseless.  The docket shows that the government

filed with the court and served Trader with notice of prior convictions pursuant to this section on

June 30, 2006, close to six months before trial.

It is difficult to construct an argument whereby six months' notice constitutes

"vindictive" intent on the part of the Government, and defendant does not provide examples

other than a claim that the government filed the notice when he refused to plead guilty.  "A

charging decision does not levy an improper 'penalty' unless it results solely from the defendant's

exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal

interest in prosecution." <u>U.S. v. Goodwin</u>, 457 U.S. 368, 380 n. 11 (1982)(emphasis added). "Put another way, the defendant must show that (1) the prosecutor harbored a genuine animus toward the defendant ... and (2) the defendant would not have been prosecuted except for the animus." <u>U.S. v. Sanders</u>, 211 F.3d 711, 717 (2d Cir. 2000) (internal quotation marks omitted).

Trader's claim that the Government sought an enhanced sentence because he refused to plead guilty fails to state a cognizable claim of vindictive prosecution. In fact, the reverse is true. The Government's delay in filing the notice while plea negotiations are underway inures to the benefit of any defendant facing an enhanced penalty because of prior drug convictions. Conversely, during the time in question, United States Attorneys were instructed, via the "Ashcroft Memorandum," to charge, and prove at trial, the most serious offense committed by a given defendant, and thus had little discretion to not file a notice of prior convictions on any defendant proceeding to trial.

In <u>Bordenkircher v. Hayes</u>, 434 U.S. 357 (1978), the Supreme Court held that there was no violation of due process even though the prosecutor advised that increased criminal charges would be filed if the defendant refused to plead guilty to lesser charges, and then did indeed increase the charges when the defendant did plead to the lesser charges. After accepting "the basic legitimacy of plea bargaining," even though "the plea may have been induced by ... fear of the possibility of a greater penalty upon conviction after a trial," the Court explained that:

> [w]hile confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable-and permissible-attribute of any legitimate system which tolerates and encourages the negotiation of pleas. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

434 U.S. at 364.

Defendant appears to suggest that the mere filing of the notice of prior convictions after he refused to plead guilty created the requisite "presumption of vindictiveness." Bordenkircher repudiates that claim, as the First Circuit squarely held in U.S. v. Jenkins:

> Here, as in Bordenkircher, the prosecutor tried to induce a plea by agreeing to lenient treatment for the defendant.... [T]he prosecutor agreed, as part of his plea offer, to refrain from filing a section 851 enhancement information, an information that was undisputedly supported by the facts. In both cases, the plea negotiations were unsuccessful, and the defendants faced higher penalties as a result. In neither case was a presumption of vindictiveness warranted.

537 F.3d 1, 4 (1st Cir. 2008); see also U.S. v. Cooks, 52 F.3d 101, 106 (5th Cir. 1995) (no presumption of prosecutorial vindictiveness where the government filed an § 851 enhancement notice after the defendant withdrew his guilty plea).

Not only has Defendant failed to sustain his burden of establishing a prima facie case of vindictiveness, but he has not even attempted to meet his burden of persuasion on the claim. He bears the affirmative burden of proving vindictiveness, because "a prosecutor's charging decision is presumptively lawful," U.S. v. Wilson, 262 F.3d 305, 315 (4th Cir. 2001) (citing U.S. v. Armstrong, 517 U.S. 456, 464 (1996) (addressing claims of selective prosecution)). Having proffered no evidence of actual vindictiveness beyond the legally deficient fact of the filing of the notice of prior convictions, defendant has utterly failed to sustain his burden. See U.S. v. Cooper, 461 F.3d 850, 856 (7th Cir. 2006) (defendant failed to sustain his burden of proving actual vindictiveness, where "he did not offer sufficient evidence of prosecutorial animus to meet this burden, [and] primarily relied on the Government's filing of the Section 851 enhancement during the time that it was trying to convince Cooper to plead guilty"). For that reason as well, this claim should be rejected.

## IV.    A HEARING ON DEFENDANT'S MOTION IS UNNECESSARY

Under 28 U.S.C. § 2255, a motion may be denied without a hearing if "the motion and files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.  This Court has adopted the following rule for determining when the district court must conduct an evidentiary hearing under § 2255:

> When a motion is made under 28 U.S.C. §2255 the question of whether to order a hearing is committed to the sound discretion of the district court.  In exercising that discretion the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record. Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.  Government of the Virgin Islands v. Bradshaw, 726 F.2d 115, 117 (3d Cir.), cert. denied, 469 U.S. 829, 105 S. Ct. 113, 83 L.Ed.2d. 56 (1984).

Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989), cert. denied, 500 U.S. 954 (1991).  See also Rule 4(b) of the Rules Governing Section 2255 Proceedings (preliminary consideration by the district court); and Rule 8 of the Rules Governing Section 2255 Proceedings (evidentiary hearings before the district court).

The foregoing requirements "do not mean that an evidentiary hearing must be held whenever [a] movant's ineffective assistance claim presents a close question." Government of the Virgin Islands v. Bradshaw, 726 F.2d 115, 117 (3d Cir.), cert. denied, 469 U.S. 829 (1984).  Rather, the district court "need only supplement the factual record when the merits of the section 2255 motion may turn on the truth of a non-frivolous allegation." Id.  The Court is not required to conduct an evidentiary hearing where the record adequately reveals the facts necessary to review the claim.  See Dall v. United States, 957 F.2d 571, 573 (8th Cir. 1992); compare United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) ("the discretion of the district court summarily to dismiss a motion under § 2255 is limited to cases where the motion, files and

records show conclusively that the movant is not entitled to relief" (citations omitted)).  Where

the record indicates that the claim for relief is without merit, the "refusal to hold a hearing will

not be deemed an abuse of discretion."  <u>Government of the Virgin Islands v. Nicholas</u>, 759 F.2d

1073, 1075 (3d Cir. 1985).  As discussed above, defendant has failed to allege any facts that

support his claims.  There is therefore no need for an evidentiary hearing.[11]

## V.     A CERTIFICATE OF APPEALABILITY SHOULD NOT ISSUE

If the District Court denies a § 2255 motion, the petitioner can only appeal if he

obtains a certificate of appealability.  28 U.S.C. § 2253.  The law permits the issuance of a

certificate of appealability only of the applicant has made a substantial showing of the denial of a

constitutional right.   28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000);

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

The application for such a certificate should first be made to the District Court.

Local Rule 22.2 provides as follows:

> At the time a final order denying a petition under 28 U.S.C. § 2254
> or § 2255 is issued, the district judge will make a determination as to
> whether a certificate of appealability should issue.  If the district judge
> issues a certificate, the judge must state the specific issue or issues that
> satisfy the criteria of 28 U.S.C. ' 2253.  If an order denying a petition
> under § 2254 or § 2255 is accompanied by an opinion or a magistrate
> judge's report, it is sufficient if the order denying the certificate
> references the opinion or report.

<u>See</u> <u>also</u> <u>United States v. Williams</u>, 158 F.3d 736, 742 n.4 (3d Cir. 1998) ("as a matter of

practice...an unsuccessful movant in a § 2255 case should in the first instance seek a certificate

of appealability from the district court.").  Accordingly, in the interests of judicial economy, the

---

[11] Likewise, defendant has raised no claims that require supplementation of the record via testimony of defense counsel, such as a claim that defendant's request to testify or call certain witnesses was ignored by counsel.  Here, all of the defendant's claims may be reviewed, and resolved, on the record as it exists.

government requests that in addition to denying the instant petition, this Court also find that Trader has failed to make a substantial showing of a denial of any constitutional right.

In order to present a "substantial showing of the denial of a constitutional right" to justify an appeal, the mere allegation of a constitutional wrong, such as deprivation of the right to effective counsel, is insufficient; the petitioner must make a substantial showing of such an error. Santana v. United States, 98 F.3d 752, 757 (3d Cir. 1996). To do this, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. at 484. Further, the claim must be constitutional in nature; there may be no certificate of appealability for an issue which presents only a statutory or sentencing guideline question. United States v. Cepero, 224 F.3d 256, 262-68 (3d Cir. 2000)(en banc).

Defendant's § 2255 petition fails to raise an issue of constitutional magnitude, therefore, no certificate of appealability should issue.

## VI.    CONCLUSION

Claims not raised on appeal are not appropriate for habeas corpus petitions. This includes Petitioner's arguments concerning prosecutorial misconduct, the timing of the § 851 notification, cumulative error doctrine, arguments concerning the testimony of law enforcement officers at trial, and non-sequestration of testifying lead case agents. Secondly, claims already adjudicated on appeal are not appropriate for habeas corpus petitions. This includes the Petitioner's arguments concerning the sufficiency of the evidence regarding a single conspiracy, controlled substance quantity, and aiding and abetting. Lastly, ineffective assistance of counsel remains the only viable argument Petitioner retains—but this too must fail. Petitioner advances each argument individually and raises several as a demonstration of ineffective assistance of

47

counsel in Ground Six.  Comprehensive analysis of each claim determines every argument void of merit, thus Petitioner cannot prevail.  It is well settled that a failure to raise a frivolous issue or make a frivolous argument, is not ineffective but rather, good advocacy.

Accordingly, for the foregoing reasons, the government respectfully requests that the defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence be denied, that the court find a hearing is not necessary, and that a Certificate of Appealability not issue.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


____/s/_____
KATHY A. STARK
Assistant United States Attorney


_____/s/_____
KATAYOUN M. COPELAND
Assistant United States Attorney

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the Government's Response to Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 has been served by first class mail, postage prepaid, upon:

Tyrone Trader
Prison Number 40143-066
USP Pollock
Post Office Box 474701
Des Moines, Iowa 50947-0001

_____/s/_____
KATAYOUN M. COPELAND
Assistant United States Attorney


Dated: ___June 30, 2014_____