**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| UNITED STATES | | CRIMINAL ACTION |
|---|---|---|
| **v.** | | |
| **TYRONE TRADER** | | **NO.  04-680-06** |

DuBois, J.                                                                                   August 18, 2015

**M E M O R A N D U M**

### I.    INTRODUCTION

On January 18, 2007, a jury found defendant Tyrone Trader guilty of conspiracy to distribute more than five kilograms of cocaine and other substantive cocaine distribution offenses. On September 29, 2008, the Court sentenced Trader to, inter alia, the mandatory minimum sentence of life imprisonment. Presently before the Court are: (1) Trader's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("§ 2255 Motion"); and (2) Trader's pro se Amendment to Motion to Vacate, Set Aside or Correct Sentence, which the Court construes as a Motion to Amend his § 2255 Motion. For the reasons set forth below, Trader's Motion to Amend is granted, and his § 2255 Motion, as amended, is dismissed and denied without an evidentiary hearing.[1]

---

[1]    This case presents a powerful example of the unfairness caused by the application of mandatory minimum sentences in cases involving low-level, nonviolent drug offenders. As discussed below, although Trader is not entitled to any relief under 28 U.S.C. § 2255, the Court remains troubled by the disproportionate sentence it was forced to impose and its lack of power, absent any action by the Government, to see to it that justice is done in this case. See infra Part IV of this Memorandum.

## II.     BACKGROUND

### A.     Facts and Procedural History

On April 13, 2005, a Grand Jury in the Eastern District of Pennsylvania returned a Fifty-Three Count Superseding Indictment against defendant Trader and eight co-defendants. In Count One, the Superseding Indictment charged that Trader participated in a conspiracy to distribute more than five (5) kilograms of cocaine in Philadelphia and Delaware Counties from in or about July 2003 through in or about October 2004, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Trader was also charged in separate counts with distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts Two, Twenty-One, Twenty-Two, and Fifty), and distribution of cocaine within 1,000 feet of a school in violation of 21 U.S.C. §§ 841(b)(1)(C) and 860(a) (Counts Three, Twenty-Three, and Fifty-One).

The Superseding Indictment described the drug conspiracy as a pyramid structure with defendant Tyrone Smith at the top. Smith was alleged to be "a supplier of large quantities of cocaine, ranging from approximately 250 grams to approximately one kilogram, which he distributed to defendant William Green . . . and others for redistribution in Delaware County, Pennsylvania." (Superseding Indict., at 3.) At the next level, the Superseding Indictment charged that defendant Green distributed the cocaine he received from defendant Smith to defendant Stillis and others for further distribution. At the bottom, the Government averred that defendant Stillis "distributed cocaine to numerous buyers in Delaware County, Pennsylvania, and used other members of the conspiracy," including defendants Tyrone Trader, Kenneth Wilson, Sherron Moore, Jamal Rideout, Richard Robinson, and Larry Davis, "to distribute cocaine to numerous street-level buyers, and to transport cocaine and to collect money from the sales of cocaine." (Id. at 3–4.) Although Trader was charged with conspiracy to distribute more than five

kilograms of cocaine, the Superseding Indictment alleged that he functioned as a street-level

dealer on the bottom rung of the conspiracy and was directly responsible for the distribution of

only 269.4 grams of cocaine. (See Sentencing Tr., Sept. 29, 2008, at 13–14.) The activities of

defendant Trader and other members of the drug conspiracy centered in the Toby Farms

neighborhood of Chester Township in Delaware County, Pennsylvania.

More than six months before trial, on June 30, 2006, the Government filed an

Information pursuant to 21 U.S.C. § 851, charging that Trader had two prior felony drug

convictions.[2] On January 3, 2007, defendants Trader, Stillis, Davis, and Rideout proceeded to

trial before a jury.[3] Trader was represented at trial by Giovanni O. Campbell, Esquire. On

January 18, 2007, the jury found Trader and his three co-defendants guilty of all charges against

them.

### B. Trader's Motion for Judgment of Acquittal or, in the Alternative, New Trial

At the close of the Government's evidence on January 16, 2007, Trader's trial counsel

presented an oral motion for judgment of acquittal pursuant to Federal Rule of Criminal

Procedure 29, contending that the evidence was insufficient to support the jury's verdict with

respect to Counts One (conspiracy to distribute more than five kilograms of cocaine), Twenty-

Two (distribution of cocaine), and Twenty-Three (distribution of cocaine within 1,000 feet of a

---

[2]     21 U.S.C. § 851 provides, in relevant part, that "[n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon."

[3]     Defendants Tyrone Smith, William Green, Sherron Moore, Richard Robinson, and Kenneth Wilson entered guilty pleas, and, with the exception of Tyrone Smith, testified against defendants Stillis, Trader, Davis, and Rideout at trial under cooperating plea agreements with the Government.

school) of the Superseding Indictment. The Court denied the oral motion for judgment of acquittal the same day.

Thereafter, on January 25, 2007, after the jury verdict, Trader's trial counsel filed a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, or, in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33. In that motion, trial counsel renewed his oral motion for judgment of acquittal and again argued that the evidence was insufficient to support the jury's verdict. Specifically, with respect to Count One, trial counsel challenged the sufficiency of the evidence as it related to: (1) the charged dates of the conspiracy, and (2) the charged drug quantities. Trial counsel also challenged the sufficiency of the evidence as it related to the distribution charges in Counts Twenty-Two and Twenty-Three. By Memorandum and Order dated July 16, 2007, the Court denied trial counsel's motion for judgment of acquittal, concluding that the evidence was sufficient to support the jury's verdict as to Counts One, Twenty-Two, and Twenty-Three. See United States v. Stillis, No. 04-680, 2007 WL 2071899, at *6–8 (E.D. Pa. July 16, 2007), aff'd, 437 F. App'x 78 (3d Cir. 2011).

Trader's trial counsel subsequently filed a motion for reconsideration of the July 16, 2007 Memorandum and Order. Trader supplemented that motion for reconsideration with numerous pro se filings, and requested the appointment of new counsel. The Court granted Trader's motion for appointment of new counsel and appointed Mark E. Cedrone, Esquire, to represent him. Thereafter, the Court denied the counseled motion for reconsideration, as supplemented by Trader's pro se filings, on the ground that the defense had failed to demonstrate that reconsideration of the Court's decision was warranted. See United States v. Trader, No. 04-680-06, 2008 WL 495724, at *1 (E.D. Pa. Feb. 22, 2008).

### C.    Sentencing and Direct Appeal

On September 29, 2008, the Court sentenced Trader to, <u>inter alia</u>, a mandatory minimum sentence of life imprisonment on Count One of the Superseding Indictment, and concurrent sentences of 180 months' imprisonment on Counts Three, Twenty-One, Twenty-Three, and Fifty-One. The mandatory minimum sentence of life imprisonment was triggered because of Trader's conviction on Count One of the Superseding Indictment and the Government's filing of a § 851 Information before trial, charging that Trader had two prior felony drug convictions. In view of the Court's lack of discretion to impose any sentence other than the mandatory minimum sentence of life imprisonment on Count One, Trader's sentencing counsel, Mark E. Cedrone, did not raise any objections to the presentence report, nor did he present any evidence. (<u>See</u> Sentencing Tr. September 29, 2008, at 20.) To the contrary, sentencing counsel stated that he "believe[d] it to be in Mr. Trader's interest to have sentence imposed, so he could then . . . appeal his conviction and judgment and then possibly deal with collateral attack, if unsuccessful." (<u>Id.</u>, at 21.)

On October 3, 2008, through his appellate counsel, Mark E. Cedrone, Trader timely appealed his conviction and sentence to the U.S. Court of Appeals for the Third Circuit. Trader raised two arguments on direct appeal: "(1) that the evidence was not sufficient to prove beyond a reasonable doubt that the conspiracy involved five or more kilograms of cocaine; and (2) that the District Court erred by relying on the jury's drug quantity finding to impose a mandatory minimum sentence [of life imprisonment]." <u>United States v. Trader</u>, No. 08-4113, slip op. at 3–4 (3d Cir. July 12, 2011). On July 12, 2011, the Third Circuit affirmed this Court's decision in all respects. <u>See</u> <u>id.</u> Thereafter, Trader filed three motions in the Third Circuit: (1) Motion by Appellant to Recall the Mandate; (2) Motion by Appellant to File Petition for Rehearing Out of

Time; and (3) Motion by Appellant to Attached [sic] Exhibits to Petition for Rehearing. By Order dated October 17, 2011, the Third Circuit denied all three of Trader's motions.

Trader did not file a petition for a writ of certiorari to the Supreme Court of the United States.

## III. DISCUSSION

Presently before the Court are Trader's timely-filed § 2255 Motion,[4] and his Amendment to Motion to Vacate, Set Aside, or Correct Sentence, which the Court construes as a Motion to Amend his § 2255 Motion. The Government has not objected to the granting of Trader's Motion to Amend, and it has responded to all of the claims raised by Trader in this habeas action. Accordingly, the Court grants Trader's Motion to Amend, and considers all of the claims raised by Trader in his § 2255 Motion and his Amendment to that Motion.

In his § 2255 Motion, as amended, Trader raises nine grounds for relief: (1) his conviction and sentence on Count One (conspiracy to distribute more than five kilograms of cocaine) and Count Twenty-Three (distribution of cocaine) of the Superseding Indictment are based upon insufficient evidence; (2) the Government presented evidence sufficient only to establish the existence of multiple conspiracies, not a single conspiracy, which allowed prejudicial evidence to be admitted against him at trial; (3) the Government violated the Sixth Amendment by failing to call as witnesses at trial the laboratory technicians who weighed and tested the drug evidence used against him; (4) the Government's use of law enforcement officers

---

[4]     On October 12, 2012, Trader filed a § 2255 Motion on the wrong standard 28 U.S.C. § 2255 form. By Order dated October 17, 2012, the Court directed the Clerk of Court to provide Trader with the correct form, and further instructed Trader to file his § 2255 motion using that form within forty-five days. By Order dated October 18, 2012, the Court provided that any § 2255 motion filed pursuant to the Court's October 17, 2012 Order would be deemed filed as of October 12, 2012. Trader filed his § 2255 Motion using the correct form on November 26, 2012, within the required forty-five day period. Thus, pursuant to the Court's October 18, 2012 Order, the Court deems Trader's § 2255 Motion filed on October 12, 2012.

as fact witnesses to give expert testimony resulted in prejudice; (5) the Government engaged in prosecutorial misconduct throughout the trial; (6) ineffective assistance of trial and appellate counsel in failing to raise the aforementioned issues at trial or on appeal; (7) the cumulative error doctrine requires that a new trial be granted; (8) his sentence of life imprisonment is unconstitutional under Alleyne v. United States, 133 S. Ct. 2151 (2013); and (9) the Court abused its discretion in allowing the lead case agents to sit at the prosecution's counsel table during trial.[5] For the reasons that follow, Trader's § 2255 Motion, as amended, is dismissed and denied without an evidentiary hearing.

### A. Ground One: Alleged Insufficiency of the Evidence as to Counts One and Twenty-Three of the Superseding Indictment

In his first ground for relief, Trader argues that the evidence presented at trial was insufficient to sustain his conviction on Counts One and Twenty-Three of the Superseding Indictment. The Court considers Trader's arguments with respect to each Count in turn.

### i. Count One: Conspiracy to Distribute More than Five Kilograms of Cocaine

With respect to his conviction on Count One, Trader contends that the evidence presented at trial was insufficient to establish that he knew that the conspiracy of which he was a part involved the distribution of more than five kilograms of cocaine. The Court rejects this argument.

First, this claim fails because it has already been adjudicated by this Court and the Third Circuit. Specifically, in a post-trial motion filed pursuant to Federal Rules of Criminal Procedure

---

[5]    The Government argues that all of Trader's claims — except his ineffective assistance of counsel claims and his claim under Alleyne v. United States — are procedurally defaulted because he did not raise them on direct appeal. Gov't Resp. to Pet'r's § 2255 Mot. 16–17; see Hodge v. United States, 554 F.3d 372, 379 (3d Cir. 2009); Massaro v. United States, 538 U.S. 500, 504 (2003). Because the Court concludes that all of Trader's claims fail on the merits, the Court does not reach the issue of procedural default.

29 and 33, Trader challenged the sufficiency of the evidence as it related to: (1) the charged dates of the conspiracy, and (2) the charged drug quantities. The Court denied Trader's motion by Memorandum and Order dated July 16, 2007, concluding that the evidence was sufficient to support the jury's verdict as to Count One. Trader appealed the Court's decision to the Third Circuit, and the Third Circuit affirmed this Court's decision in all respects. Thus, insofar as Trader seeks to re-litigate the issue of whether the evidence was sufficient to sustain his conviction for conspiracy, the Court dismisses this claim. See In re City of Philadelphia Litig., 158 F.3d 711, 718 (3d Cir. 1998) (concluding that the law of the case doctrine precludes review of those legal issues decided in a prior appeal); United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001) (concluding that "[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255").

In any event, this claim fails on the merits. The Government did not have to prove at trial that Trader actually knew that the conspiracy of which he was a part distributed more than five kilograms of cocaine. Rather, pursuant to the Pinkerton doctrine, "Trader was liable for all reasonably foreseeable criminal offenses committed by his co-conspirators during the course of, and in furtherance of, the drug conspiracy." United States v. Trader, No. 08-4113, slip op. at 5 (3d Cir. July 12, 2011) (citing Pinkerton v. United States, 328 U.S. 640, 646–48 (1946)). The evidence presented at trial was sufficient to satisfy the Pinkerton standard. As stated by the Third Circuit:

> At the outset of the conspiracy, in the summer of 2003, Trader went with Stillis and Rideout to purchase a half-kilogram of cocaine from Green . . . From then on, Stillis often stored cocaine at Trader's home, and Trader repackaged bulk cocaine for resale. Stillis also imposed a one ounce per week quota on Trader's sales. . . . Trader made frequent sales to street-level buyers, and, along with Stillis, sold 244 grams of cocaine to an undercover police officer. . . . Finally, Trader assisted Stillis in diluting the cocaine, so the cocaine the conspirators distributed exceeded the cocaine initially obtained. . . . Considering Trader's close

relationship with Stillis and the other street-level sellers, as well as Trader's knowledge that Stillis obtained large amounts of cocaine from Green, it was reasonably foreseeable to Trader that the conspiracy would distribute more than five kilograms of cocaine.

Trader, No. 08-4113, slip op. at 4–5 (citations omitted).

Accordingly, Trader's claim that the evidence was insufficient to sustain his conviction on Count One of the Superseding Indictment is denied.

### ii. Count Twenty-Three: Distribution of Cocaine

Trader's conviction on Count Twenty-Three was based upon the jury's finding that he knowingly and intentionally distributed, and aided and abetted the distribution of, 244.3 grams of cocaine on or about July 15, 2004, to an undercover state trooper, Scott Miscannon, within 1,000 feet of the Toby Farms Elementary School. Trader contends that the evidence presented at trial was insufficient to support the jury's verdict on Count Twenty-Three because it failed to establish his knowledge of criminal activity and that he participated in the illicit activity with the intent to facilitate the crime. The Court disagrees.

First, this claim fails because it was already adjudicated by this Court.[6] In a post-trial motion filed pursuant to Federal Rules of Criminal Procedure 29 and 33, Trader raised the same arguments he raises now with respect to his conviction on Count Twenty-Three. By Memorandum and Order dated July 16, 2007, the Court rejected Trader's arguments, concluding that "the verdict must be upheld because a reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." Stillis, 2007 WL 2071899, at *8 (citation omitted). Thus, to the extent that Trader seeks to re-litigate the

---

[6]     Trader did not appeal his conviction on Count Twenty-Three to the U.S. Court of Appeals for the Third Circuit. Although the Government argues that this claim is procedurally defaulted, as stated above, the Court does not reach the issue of procedural default in its analysis.

sufficiency of the evidence supporting his conviction on Count Twenty-Three, his claim is dismissed.

This claim also fails on the merits. "To convict a person of aiding and abetting, the government must prove [beyond a reasonable doubt]: (1) that the substantive crime has been committed; and (2) that the defendant charged with aiding and abetting knew of the commission of the substantive offense and acted with intent to facilitate it." United States v. Petersen, 622 F.3d 196, 208 (3d Cir. 2010) (alteration in original) (citation omitted). As the Court previously held, the Government presented sufficient evidence at trial to satisfy this standard. Trooper Miscannon testified that Trader was present with co-defendant Stillis throughout the course of the sale on or about July 15, 2004, and "vouched" for the quality of the cocaine. Stillis, 2007 WL 2071899, at *8. Trooper Miscannon's testimony, along with the other evidence presented at trial, was sufficient to establish Trader's guilt beyond a reasonable doubt on Count Twenty-Three. Thus, Trader's claim with respect to Count Twenty-Three is denied.

In sum, the claims raised by Trader in his first ground for relief with respect to his conviction on Counts One and Twenty-Three of the Superseding Indictment are dismissed and denied.

## B. Ground Two: Allegation that The Evidence at Trial Established the Existence of Multiple Conspiracies, Not a Single Conspiracy

In his second ground for relief, Trader argues that the evidence presented at trial was not sufficient to establish that he was a part of a single conspiracy led by Tyrone Smith. According to Trader, the evidence only established the existence of multiple conspiracies. The Court construes this as a claim that there was a prejudicial variance in the evidence presented at trial. See United States v. Kemp, 500 F.3d 257, 287 n.18 (3d Cir. 2007). The Court rejects this argument.

At the conclusion of trial, the Court instructed the jury that "[w]hether there existed a single unlawful agreement or many such agreements or indeed no agreement at all is a question of fact for you, the jury, to determine in accordance with [the Court's] instructions." (Trial Tr., January 18, 2007, at 73.) The jury rejected the argument that the evidence only established the existence of multiple conspiracies and found that Trader was a part of the single conspiracy charged in Count One of the Superseding Indictment. As stated above, this Court and the Third Circuit previously adjudicated the question of whether the evidence was sufficient to support the jury's verdict as to Trader's conviction for conspiracy. In upholding that conviction, this Court and the Third Circuit determined that there was sufficient evidence to support the jury's finding that Trader was a member of a single conspiracy in which cocaine was supplied for distribution by Tyrone Smith to William Green, from Green to Louis Stillis, and from Stillis to several street-level dealers including Trader. Thus, to the extent that Trader seeks to re-litigate the sufficiency of the evidence relating to his conviction for conspiracy on Count One of the Superseding Indictment, this claim is dismissed.

In any event, this claim fails on the merits. In determining whether a series of events constitutes a single conspiracy or separate and unrelated conspiracies, the Court considers three factors: (1) "whether there was a common goal among the conspirators"; (2) "whether, in light of the nature of the scheme, the agreement contemplated brought to pass a continuous result that would not continue without the continuous cooperation of the conspirators"; and (3) "the extent to which the participants overlap in the various dealings." United States v. Kelly, 892 F.2d 255, 259 (3d Cir. 1989). All three of these factors are satisfied in this case.

As stated by the Third Circuit, "[a]t the outset of the conspiracy, in the summer of 2003, Trader went with Stillis and Rideout to purchase a half-kilogram of cocaine from

Green . . . From then on, Stillis often stored cocaine at Trader's home, and Trader repackaged bulk cocaine for resale. Stillis also imposed a one ounce per week quota on Trader's sales. . . . Trader made frequent sales to street-level buyers, and, along with Stillis, sold 244 grams of cocaine to an undercover police officer. . . . Finally, Trader assisted Stillis in diluting the cocaine, so the cocaine the conspirators distributed exceeded the cocaine initially obtained." Trader, No. 08-4113, slip op. at 4–5 (citations omitted). That evidence, and all of the other evidence presented at trial, was sufficient to establish Trader's role in a "typical chain conspiracy" in which he and his coconspirators relied on the performance of each other and "share[d the] common goal . . . [of] possession and distribution of narcotics for profit." Kemp, 500 F.3d at 289 n.19; see Kelly, 892 F.2d at 259. Thus, there was no variance between the single conspiracy charged in the Superseding Indictment and the evidence presented at trial. The jury's finding that Trader was a part of a single conspiracy led by Tyrone Smith is supported by sufficient evidence.

Accordingly, Trader's second ground for relief is dismissed and denied.

### C. Grounds Three and Four: Alleged Violation of Trader's Sixth Amendment Right to Confront Witnesses Under the Confrontation Clause and Alleged Improper Use of Fact Witnesses to Provide Expert Testimony

In his third and fourth grounds for relief, Trader argues that that the Government violated his Sixth Amendment right to confront the witnesses against him because the Government did not call as witnesses at trial the laboratory technicians who weighed and tested the drug evidence used against him. Trader further contends that the Court improperly allowed fact witnesses to provide expert testimony relating to that drug evidence. The Court rejects these arguments.[7]

---

[7] One of Trader's co-defendants, Louis Stillis, raised the same claims in a separately-filed motion pursuant to 28 U.S.C. § 2255. The Court rejected Stillis' arguments for the same reasons it rejects Trader's arguments in this Memorandum. See United States v. Stillis, No. 04-680-03, 2015 WL 2333010, at *9–10 (E.D. Pa. May 14, 2015).

Trader's claim that the Government violated his Sixth Amendment right to confront the witnesses against him fails because he stipulated to the admission of the lab reports into evidence before trial. The stipulation was read into the record during the course of the trial, and it provided in relevant part that:

> The defendants and Government agree that the substances obtained by the Pennsylvania State Police and/or the Drug Enforcement Administration and analyzed pursuant to the lab report numbers set forth below, confiscated on the dates noted, contain a detectable amount of Schedule II controlled substance, namely cocaine. And weighed the amounts indicated below within the meaning of Title 21, United States Code, Sections 841(a) and (b), Section 846 and Section 860 . . . The defendants and Government agree and stipulate that this stipulation and its attachments are admissible in evidence without the necessity of calling the individual chemists to verify the chemical composition and the weights of the substances listed above.

(Trial Tr., January 12, 2007, at 153–55.) In light of the stipulation, the Government was not required to call the lab technicians as witnesses at trial. See United States v. Williams, 403 F. App'x 707, 708 (3d Cir. 2010) (non-precedential) (defendant waived Sixth Amendment right to confront laboratory technicians by stipulating to the admissibility of the laboratory evidence).

Trader's claim that the Court improperly allowed fact witnesses to provide expert testimony relating to the drug evidence used against him also fails. Trader identified the following passage as an example of the relevant testimony on this issue:

| Ms. Stark: | And what is Government Exhibit Number 54? |
|---|---|
| Trooper Miscannon: | It's a report of drug property collected. Which is basically a lab report from the Drug Enforcement Administration. |
| Ms. Stark: | And with respect to the weight of the controlled substance contained in Government Exhibit 54, and the content of the controlled substance, what was the content of the controlled substance? |
| Trooper Miscannon: | The active ingredient of cocaine, hydrochloride. |

(Trial Tr., January 8, 2007, at 20–21.) As discussed above, Trader stipulated to the admission of the lab reports into evidence before trial, and he expressly agreed that there would be no need to call the "individual chemists to verify the chemical composition and the weights of the

substances" in the lab reports. (Trial Tr., January 12, 2007, at 153–55.) In light of the stipulation, there was nothing improper about testimony from Trooper Miscannon discussing the results of the lab reports, i.e. that the substance in question was cocaine. In so testifying, Trooper Miscannon did not improperly offer any expert testimony. See United States v. Stillis, No. 04-680-03, 2015 WL 2333010, at *10 (E.D. Pa. May 14, 2015).

Accordingly, Trader's third and fourth grounds for relief are denied.

### D. Ground Five: Alleged Prosecutorial Misconduct Committed by the Government throughout the Trial

In his fifth ground for relief, Trader argues that the Government committed numerous instances of prosecutorial misconduct throughout the trial which entitle him to habeas relief. Those instances of alleged misconduct involve "attempt[s by the Government] to introduce inadmissible evidence in the presence of the jury or encourage its witnesses to make statements which inflamed the passions of the jury." (§ 2255 Mot., Document No. 679–1, at 10.) This claim fails.

"In order for prosecutorial misconduct to merit a reversal . . . [the] Court must find that it is more probable than not that the alleged misconduct influenced the jury's ultimate verdict." United States v. Bates, 46 F. App'x 104, 110 (3d Cir. 2002) (non-precedential) (citations omitted). Relief for prosecutorial misconduct is appropriate "when the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" United States v. Walker, No. 94-488, 2000 WL 378532, at *10 (E.D. Pa. Apr. 4, 2000) (citing Darden v. Wainwright, 477 U.S. 168, 181 (1986)). "[F]or due process to have been offended, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." Werts v. Vaughn, 228 F.3d 178, 197–98 (3d Cir. 2000) (quoting Greer v. Miller, 483 U.S. 756, 765 (1987)).

None of Trader's allegations of prosecutorial misconduct rise to the level required to justify granting habeas relief. First, Trader argues that the Government committed prosecutorial misconduct when one of its witnesses — Michael Skahill, a Pennsylvania State Trooper — made reference during his testimony to undercover gun purchases made in the Toby Farms neighborhood during the course of his investigation into the drug conspiracy. Although the Court sustained a defense objection to the part of Trooper Skahill's testimony in which he referred to gun purchases, the Court accepted the Government's representation at a sidebar discussion that it was unaware that Trooper Skahill was going to reference gun purchases in his testimony. (Trial Tr., January 5, 2007, at 37–39.) Moreover, immediately following the sidebar discussion, the Court instructed the jury to disregard any testimony relating to the investigation of illegal gun purchases. (Id. at 41.) The jury is presumed to follow a curative instruction "unless there is an overwhelming probability that the jury will be unable to follow it and a strong likelihood that the effect of the evidence would be devastating to the defendant." United States v. Newby, 11 F.3d 1143, 1147 (3d Cir. 1993) (citations and internal quotation marks omitted). No such circumstances are present in this case. Thus, even though Trooper Skahill made improper reference to gun purchases during his testimony, the Court's curative instruction was sufficient to ensure that Trader was not denied the right to a fair trial. See Werts, 228 F.3d at 197–98.

Trader's next assertion of prosecutorial misconduct arises out of several hearsay statements referenced by Trooper Skahill in his testimony. The Court sustained a defense objection to that testimony, struck the improper comments from the record, and immediately thereafter instructed the jury to disregard those comments. (Trial Tr., January 5, 2007, at 94–95.) As stated above, the jury is presumed to follow such an instruction. See Newby, 11 F.3d at 1147. There is no evidence of any prosecutorial misconduct in connection with this portion of Trooper

Skahill's testimony such that Trader was denied the right to a fair trial. Werts, 228 F.3d at 197–98.

Next, Trader asserts that the Government improperly elicited testimony from Trooper Skahill regarding the execution of search warrants at a residence associated with Tyrone Smith — the ringleader of the drug conspiracy. Defense counsel objected to such testimony on the ground that it was irrelevant because Smith had plead guilty and was no longer a party to the case. After hearing argument at a sidebar discussion, the Court noted that the Superseding Indictment charged the four defendants who proceeded to trial — Trader, Stillis, Davis, and Rideout — as being part of a single drug conspiracy led by Tyrone Smith, and thus concluded that, so long as the Government presented sufficient evidence to link those defendants to Smith, evidence relating to contraband discovered at residences associated with Smith was relevant and admissible. (Trial Tr., January 5, 2007, at 97–101.) As discussed above with respect to Trader's first and second grounds for relief, the Government presented sufficient evidence at trial to link Trader to the drug conspiracy led by Smith. There was thus nothing improper about testimony at Trader's trial concerning contraband recovered at residences associated with Smith. As such, there was no prosecutorial misconduct in connection with this portion of Trooper Skahill's testimony.

Trader next argues that the Government committed prosecutorial misconduct by submitting a "blank exhibit list." (§ 2255 Mot., Document No. 679–1, at 9.) Trader refers to an instance at trial in which the Government sought to introduce an exhibit — empty kilogram wrappers of cocaine recovered from a residence associated with Smith — which had not been previously marked. Although the Court instructed the Government to make sure that its exhibit list was updated so that defense counsel had notice of what evidence was being offered, the

record is clear that counsel for defendants were aware of the existence of the empty kilo wrappers and had been previously provided with a list of items seized from the residence. (Trial Tr., January 5, 2007, at 107–10.) The Government's delayed marking of this exhibit does not constitute prosecutorial misconduct, and did not cause any "unfairness [so] as to make [Trader's] resulting conviction a denial of due process." <u>Walker</u>, 2000 WL 378532, at *10.

Trader also contends that the Government improperly elicited testimony from Trooper Skahill in which Trooper Skahill stated that he had the opportunity to speak with Trader and his co-defendants following their arrests and extend them each an offer to cooperate with the Government. (Trial Tr., January 5, 2007, at 117–18.) The Government's purpose in eliciting such testimony was to lay a foundation for Trooper Skahill's identification of the voices of Trader and his co-defendants on various tape-recorded conversations. (<u>Id.</u> at 119.) Defense counsel objected to Trooper Skahill's testimony on the ground that the subject matter of the conversations relating to offers of cooperation was irrelevant and inadmissible. (<u>Id.</u> at 118.) The Court sustained defense counsel's objection, and instructed the jury to disregard the subject matter of the conversations and to consider Trooper's Skahill's testimony only insofar as it related to establishing whether he was able to identify Trader and his co-defendants as speakers on any tape-recorded conversations entered into evidence. (<u>Id.</u> at 122.) The jury is presumed to have followed the Court's curative instruction. <u>See</u> <u>Newby</u>, 11 F.3d at 1147. There is no evidence of any prosecutorial misconduct, and Trader cannot demonstrate that he was denied the right to a fair trial by reason of Trooper Skahill's testimony. <u>Werts</u>, 228 F.3d at 197–98.

Finally, Trader contends that the Government engaged in prosecutorial misconduct by improperly allowing fact witnesses to provide expert testimony relating to the drug evidence used against him. The Court addressed this contention <u>supra</u> in Part III.C in connection with

Trader's fourth ground for relief, and Trader's attempt to recast his argument as a claim of prosecutorial misconduct fails for the same reasons stated above: in light of Trader's stipulation to the admissibility of the lab reports offered into evidence by the Government, the state troopers who made reference to the results of those lab reports did not improperly offer any expert testimony in doing so.

In sum, Trader has failed to demonstrate the existence of any prosecutorial misconduct, much less the level of misconduct required to warrant the granting of habeas relief. Accordingly, his fifth ground for relief is denied.

### E.  Ground Six: Alleged Ineffective Assistance of Trial and Appellate Counsel

In his sixth ground for relief, Trader argues that his trial and appellate counsel were ineffective in failing to raise all of the issues discussed supra in Parts III.A–D of this Memorandum. Trader further contends that his trial and appellate counsel were ineffective in failing to challenge the timing of the Government's filing of a § 851 Information. After setting forth the appropriate legal standard, the Court considers Trader's claims in turn.

### i.  Legal Standard

"Strickland v. Washington supplies the standard for addressing a claim of ineffective assistance of counsel." United States v. Smack, 347 F.3d 533, 537 (3d Cir. 2003). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984).

The Strickland standard requires a two-part inquiry. "First, the defendant must show that counsel's performance was deficient," id. at 687, that is, "that counsel's representation fell below an objective standard of reasonableness," id. at 688. The measure for counsel's performance under the first prong is "whether counsel's assistance was reasonable considering all the

circumstances," including "[p]revailing norms of practice." <u>Id.</u> "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense." <u>Id.</u> at 687. With respect to the prejudice prong, the defendant is required to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." <u>Id.</u> Furthermore, "[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" <u>United States v. Gray</u>, 878 F.2d 702, 711 (3d Cir. 1989) (quoting <u>Strickland</u>, 466 U.S. at 696).

### ii. Alleged Ineffective Assistance of Counsel as to Failure to Raise Claims Discussed in Parts III.A–D of this Memorandum

In his § 2255 Motion, as amended, Trader incorporates by reference all of the issues discussed <u>supra</u> in Parts III.A–D of this Memorandum and "also claims [that] each of those contentions has resulted in the ineffective assistance of counsel, warranting grant of the instant motion." (§ 2255 Mot., Document No. 679–1, at 11.) All of the claims Trader incorporates by reference fail on the merits for the reasons stated above; consequently, Trader's claims of ineffective assistance of counsel relating to those issues also fail. <u>See, e.g.</u>, <u>Gov't of Virgin Islands v. Lewis</u>, 620 F.3d 359, 372 (3d Cir. 2010) (citing <u>Thomas v. Horn</u>, 570 F.3d 105, 121 n.7 (3d Cir. 2009)) (counsel cannot be ineffective for failing to raise issues that lack merit); <u>Strickland</u>, 466 U.S. at 694 (to show prejudice, a defendant is required to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

### iii.  Alleged Ineffective Assistance of Counsel as to Failure to Challenge Timing of Government's Filing of a § 851 Information

Trader also asserts that trial and appellate counsel were ineffective in failing to challenge the timing of the Government's filing of a § 851 Information. According to Trader, the filing of the § 851 Information evidences the "vindictive" intent of the Government to punish him for his decision to proceed to trial rather than to plead guilty and/or cooperate. (§ 2255 Mot., Document No. 679–1, at 14.) The Court rejects this argument. Trial and appellate counsel were not ineffective in failing to raise a claim of vindictive prosecution because, for the reasons set forth below, such a claim fails on the merits.

The Supreme Court of the United States has established two distinct approaches to the question of prosecutorial vindictiveness: a presumption of vindictiveness and actual vindictiveness. A presumption of vindictiveness applies in situations in which there is a "realistic likelihood" of vindictiveness, Blackledge v. Perry, 417 U.S. 21, 27 (1974), such as where a defendant's successful exercise of a procedural right requires a complete retrial after he or she has already been tried and convicted. See North Carolina v. Pearce, 395 U.S. 711 (1969) (applying presumption of vindictiveness where a judge imposes a harsher sentence on a defendant after a retrial following a successful appeal); Blackledge, 417 U.S. at 21 (applying presumption where prosecutor "ups the ante" by obtaining a felony indictment after a convicted misdemeanant pursues his statutory appellate remedy).

The Supreme Court has concluded, however, that no such presumption of vindictiveness is warranted when a defendant challenges a prosecutor's pretrial decision concerning what charges to bring. See United States v. Goodwin, 457 U.S. 368, 381 (1982) (stating that "a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision"); Bordenkircher v. Hayes, 434 U.S. 357 (1978)

(no due process violation where prosecutor carried out threat to bring additional charges if defendant did not agree to a plea bargain). The Supreme Court has stated that a prosecutor "should remain free before trial to exercise . . . broad discretion" to alter or even increase the charges pending against a defendant to the limits that the law allows. Goodwin, 457 U.S. at 382 (no presumption of vindictiveness where prosecutor obtained felony indictment after defendant requested a trial by jury on pending misdemeanor charges).

Trader faults his trial and appellate counsel for not challenging the Government's pretrial decision to file a § 851 Information. The presumption of vindictiveness does not apply in such a situation. See id. at 381; Bordenkircher, 434 U.S. at 357. In the absence of that presumption, Trader would have to demonstrate that the Government's decision to file a § 851 Information was motivated by actual vindictiveness in order to establish a due process violation. See id. at 384 (in the absence of a presumption, a defendant may "prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do"); see also United States v. Oliver, 787 F.2d 124, 125–26 (3d Cir. 1986) (distinguishing Blackledge from Bordenkircher and Goodwin).

Trader's only basis for demonstrating actual vindictiveness is his own unsupported assertion that the Government only filed the § 851 Information because its attempts to force him to plead guilty and/or cooperate failed. Such conclusory allegations are not sufficient to meet Trader's burden of proof, and do not afford a sufficient basis for conducting an evidentiary hearing. See Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991) (holding that § 2255 movant could not meet his burden of proving ineffective assistance of counsel "based on vague and conclusory allegations"); Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987) ("[B]ald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary

hearing."); see also United States v. Cooper, 461 F.3d 850, 856 (7th Cir. 2006) (rejecting argument that prosecutor's filing of a § 851 Information during plea negotiations, without more, was sufficient evidence of actual vindictiveness).

To the contrary, the evidence in the record refutes Trader's claim of prosecutorial vindictiveness. The Government filed the § 851 Information on June 30, 2006 — more than six months before trial began. The timing of the Government's filing of the § 851 Information is consistent with the Government's argument that its discretion not to seek a statutory enhancement under § 851 was constrained by then-Department of Justice policy in the form of the "Ashcroft Memorandum." In that Memorandum, issued on September 22, 2003, then-Attorney General John Ashcroft adopted a policy in which federal prosecutors were directed "to charge and to pursue the most serious, readily provable offense, which was defined as the offense generating the most substantial sentence." United States v. Kupa, 976 F. Supp. 2d 417, 429 (E.D.N.Y. 2013) (internal quotation marks omitted) (citing Memorandum from John Ashcroft, Att'y Gen. of the United States, to All Federal Prosecutors, Department Policy Concerning Charging Criminal Offenses, Disposition of Charges, and Sentencing (Sept. 22, 2003), reprinted in 16 Fed. Sent'g Rep. 129, 130 (2003)). The Ashcroft Memorandum "specifically addressed [the filing of] prior felony informations, 'strongly encourag[ing]' their use since they always increase a sentence." Kupa, 976 F. Supp. 2d at 429–30. The Ashcroft Memorandum "expressly acknowledged that a prior felony information produces in many cases a statutory sentence [that is] harsher than the applicable guidelines range," but "authorize[d] a prosecutor to forego the filing of a statutory enhancement . . . only in the context of a negotiated plea agreement." Id. at 429–30, 430 n.52.

Although Department of Justice policy in this regard has since changed,[8] the Government was required to comply with the Ashcroft Memorandum at the time that Trader's case was proceeding to trial.[9] In view of the Ashcroft Memorandum and Trader's refusal to enter into a negotiated plea agreement, the Government's discretion not to file a § 851 Information in Trader's case was constrained. (See Sentencing Tr., September 29, 2008, at 29–31) (referring to the effect of the Ashcroft Memorandum on Trader's prosecution). Under these circumstances, Trader cannot maintain a claim of prosecutorial vindictiveness.

As "[c]ounsel cannot be deemed to have violated professional norms by failing to raise a meritless objection," United States v. Mainor, No. 12-85, 2014 WL 1632188, at *6 (E.D. Pa. Apr. 24, 2014), the Court concludes that Trader's trial and appellate counsel were not constitutionally deficient in failing to challenge the timing of the Government's filing of a § 851

---

[8]     In 2010, then-Attorney General Eric Holder announced a change in Department of Justice policy. In a Memorandum dated May 19, 2010, Attorney General Holder "reiterated the 'long-standing' principle that prosecutors should charge the most serious offense available, but added that they should also make individualized assessments as to whether such charges are appropriate." United States v. Kupa, 976 F. Supp. 2d 417, 430 (E.D.N.Y. 2013) (citing Memorandum from Eric H. Holder, Jr., Att'y Gen. of the United States, to All Federal Prosecutors, Department Policy on Charging and Sentencing (May 19, 2010)). In a subsequent Memorandum dated August 12, 2013, Attorney General Holder went on to state that "[p]rosecutors should decline to file an information pursuant to 21 U.S.C. § 851 unless the defendant is involved in conduct that makes the case appropriate for severe sanctions." Id. at 456 (citing Memorandum from Eric H. Holder, Jr., Att'y Gen. of the United States, to U.S. Att'ys and Assistant U.S. Att'ys for the Criminal Div. re: Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases (Aug. 12, 2013)). Attorney General Holder further clarified in a September 24, 2014 Memorandum that "[a] § 851 enhancement should not be used in plea negotiations for the sole or predominant purpose of inducing a defendant to plead guilty." Memorandum from Eric H. Holder, Jr., Att'y Gen. of the United States, to U.S. Att'ys and Assistant U.S. Att'ys for the Criminal Div. re: Guidance Regarding § 851 Enhancements In Plea Negotiations (Sept. 24, 2014).

[9]     The Court notes that, although federal prosecutors are required to follow internal Department of Justice guidelines and policies, those internal guidelines and policies "do not create enforceable rights for criminal defendants." United States v. Ruchlewicz, No. 14-3809, 2015 WL 4385690, at *1 (3d Cir. July 17, 2015) (non-precedential) (citing United States v. Wilson, 413 F.3d 382, 389 (3d Cir. 2005)).

Information in Trader's case. See also Lewis, 620 F.3d at 372 (counsel cannot be ineffective for failing to raise issues that are without merit); Strickland, 466 U.S. at 694 (defining prejudice as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

Accordingly, as all of Trader's claims of ineffective assistance of counsel fail, Trader's sixth ground for relief is denied.

### F.  Ground Seven: Assertion of Cumulative Error

In his seventh ground for relief, Trader contends that "[i]f the Court believes that any of the claimed issues [in the habeas motion] does not individually require judicial relief, when consideration of these claims is made in conjunction with each other argument raised, this will demonstrate an entitlement to judicial relief pursuant to the cumulative error doctrine." (§ 2255 Mot., Document No. 679-1, at 18.) The Court disagrees.

 "[A] cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Albrecht v. Horn, 485 F.3d 103, 139 (3d Cir. 2007) (quoting Darks v. Mullin, 327 F.3d 1001, 1018 (10th Cir. 2003)). To prevail on a claim under the cumulative error doctrine, a defendant must show actual prejudice, i.e. that "the [ ] errors, when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." United States v. Thornton, 1 F.3d 149, 156 (3d Cir. 1993) (alteration in original) (quoting United States v. Hill, 976 F.2d 132, 145 (3d Cir. 1992)).

Trader's claim of cumulative error fails because he has failed to demonstrate the existence of any constitutional errors. As the Third Circuit has stated, "[t]he cumulative effect of

each non-error does not rise to constitutional error; as the saying goes, zero plus zero equals zero." United States v. Powell, 444 F. App'x 517, 522 (3d Cir. 2011) (non-precedential). Even if Trader had shown the existence of individual errors, in light of the strength of the evidence offered against him at trial, he cannot show that any such errors, "when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." Thornton, 1 F.3d at 156.

Accordingly, Trader is not entitled to relief under the cumulative error doctrine, and his seventh ground for relief is denied.

### G. Ground Eight: Alleged Unconstitutionality of Trader's Life Sentence under Alleyne v. United States

In his eighth ground for relief, Trader argues that his sentence of life imprisonment is unconstitutional under Alleyne v. United States, 133 S. Ct. 2151 (2013), because the Court did not submit to the jury the factual issue of whether he had two prior felony convictions, as charged in the § 851 Information filed by the Government.[10] The Court rejects Trader's argument.

In Alleyne, the Supreme Court of the United States held that, under the Sixth Amendment, "any facts that increase the prescribed range of penalties to which a criminal defendant is exposed are elements of the crime" and must be found beyond a reasonable doubt by the jury. 133 S. Ct. at 2160. The Third Circuit has held that Alleyne is not retroactive to cases on collateral review. United States v. Reyes, 755 F.3d 210, 212 (3d Cir.), cert. denied, 135 S. Ct.

---

[10]     At sentencing, Trader did not challenge the validity of the prior convictions set forth in the § 851 Information filed by the Government. (See Sentencing Tr., September 29, 2008, at 33–36.) Any such challenge to those convictions by Trader would have been unsuccessful because the convictions predated the filing of the § 851 Information by more than five years. See 21 U.S.C. § 851(e) ("No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction.").

695 (2014); United States v. Winkelman, 746 F.3d 134 (3d Cir. 2014). Trader's conviction and sentence became final on January 15, 2012, the date on which the time for filing a petition for writ of certiorari by the Supreme Court of the United States expired. See Kapral v. United States, 166 F.3d 565, 567 (3d Cir. 1999) ("[A] conviction does not become 'final' under § 2255 until expiration of the time allowed for certiorari review by the Supreme Court."). Alleyne was decided on June 17, 2013. As Alleyne does not apply retroactively to cases on collateral review, Trader's claim under Alleyne fails.[11]

Accordingly, Trader's eighth ground for relief is denied.

### H. Ground Nine: Alleged Abuse of Discretion in Allowing Lead Case Agents to Sit at the Prosecution Table During the Trial

In his ninth and final ground for relief, Trader asserts that the Court abused its discretion in allowing lead case agents to sit at the prosecution's counsel table during trial in view of the sequestration order that was in place. The Court disagrees.

As relevant here, Federal Rule of Evidence 615 provides: "At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. . . . But this rule does not authorize excluding: . . . an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney." Fed. R. Evid. 615(b). The Third Circuit has interpreted Rule 615(b) as establishing a "case agent" exception to the typical rule of sequestration. United States v. Gonzalez, 918 F.2d 1129, 1138 (3d Cir. 1990).

---

[11] The Court also notes that Alleyne "do[es] nothing to restrict the established exception under Almendarez–Torres[ v. United States, 523 U.S. 224 (1998)]" which allows "a judge, rather than a jury, [to] determine the fact of a prior conviction." United States v. Blair, 734 F.3d 218, 227 (3d Cir. 2013) (citation and internal quotation marks omitted); see Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added). Thus, the determination that Trader had two prior felony drug convictions was properly made by this Court at sentencing, rather than by the jury at trial.

Under this exception, "the government case agent responsible for a particular investigation should be permitted to remain in the courtroom, even though the agent will often testify later on behalf of the government." Id. This construction of the Rule is supported by the Advisory Committee Notes, which state, in relevant part, that

> [The practice of allowing] government counsel to have an investigative agent at counsel table throughout the trial although the agent is or may be a witness . . . is permitted as an exception to the rule of exclusion and compares with the situation defense counsel finds himself in — he always has the client with him to consult during the trial. The investigative agent's presence may be extremely important to government counsel, especially when the case is complex or involves some specialized subject matter. The agent, too, having lived with the case for a long time, may be able to assist in meeting trial surprises where the best-prepared counsel would otherwise have difficulty.

In light of this authority, it is clear that the Court did not abuse its discretion in allowing the state troopers whom the Government designated as representatives for the Pennsylvania State Police to remain at the prosecution's counsel table throughout the trial. Accordingly, Trader's ninth and final ground for relief is denied.

## I.  Request for an Evidentiary Hearing

Trader requests that the Court hold an evidentiary hearing with respect to his claims. Under 28 U.S.C. § 2255, "the question of whether to order a hearing is committed to the sound discretion of the district court." Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). In exercising that discretion, "the [C]ourt must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." Id.; see also United States v. Day, 969 F.2d 39, 41–42 (3d Cir. 1992). The Court denies Trader's request for an evidentiary hearing because the record conclusively establishes that he is not entitled to the relief sought in his § 2255 Motion.

### J. Certificate of Appealability

A certificate of appealability shall issue only if the movant establishes "that jurists of reason would find it debatable whether the [motion] states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." See Slack v. McDaniel, 529 U.S. 473, 484 (2000); Morris v. Horn, 187 F.3d 333, 340 (3d Cir. 1999); 28 U.S.C. § 2253(c). The Court concludes that Trader has not made such a showing with respect to his § 2255 Motion. Thus, a certificate of appealability shall not issue.

### IV. FINAL THOUGHTS

At Trader's sentencing, the Court stated the following:

> Drug crimes are serious crimes, and nothing [the Court is] saying today should be taken . . . — in any way, shape, or form [—] as minimizing the seriousness of drug crimes. What [the Court is] saying today is a life sentence for the crime[s] of conviction is much too harsh a sentence to impose. It just overstates the seriousness of the offense[s]. And were [the Court] given any discretion, as [the Court has] said before, [the Court] would impose a substantially lower sentence.

(Sentencing Tr., September 29, 2008, at 43.) The Court reiterates those statements today. Although Trader's sentence of life imprisonment is authorized by law, it does not follow that "all that is constitutional is just . . . ." United States v. Randy Washington, No. 11-605, slip op. at 12 (S.D.N.Y. July 31, 2014) (Sullivan, J.). It is difficult to see how a sentence of life imprisonment in Trader's case is just, or how such a sentence advances the goals of 18 U.S.C. § 3553(a), which requires a court to impose a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing as set forth in that statute.

The disproportionate nature of Trader's sentence is underscored by a comparison to the sentences imposed on co-defendants Jamal Rideout and Larry Davis — who, like Trader, were charged as street-level dealers on the bottom rung of the conspiracy. Davis was released from

prison on October 22, 2012; Rideout was released from prison on February 26, 2014. See Inmate

Locator, Federal Bureau of Prisons, http://www.bop.gov/inmateloc/. The injustice of Trader's

sentence is further highlighted by the fact that, in Fiscal Year 2014, the average sentence in

federal court for murder was just under 23 years — a stark contrast to the sentence of life

imprisonment that Trader is presently serving for his role in a drug conspiracy in which his direct

personal involvement was limited to the distribution of 269.4 grams of cocaine. See U.S.

Sentencing Comm'n, 2014 Sourcebook of Federal Sentencing Statistics, tbl. 13 (2014), available

at http://www.ussc.gov/research-and-publications/annual-reports-sourcebooks/2014/sourcebook-

2014.

    And yet the Court remains powerless under the law to ensure that justice is done in

Trader's case. That power lies with the prosecutors involved in this case, at all levels, who are in

a position to reconsider whether Trader's sentence of life imprisonment "is a sentence and an

exercise of prosecutorial discretion worthy of the public's trust and confidence." Washington,

No. 11-605, slip op. at 12. As Judge John Gleeson has stated, prosecutors have "the power to

seek justice even after all appeals and collateral attacks have been exhausted and there is neither

a claim of innocence nor any defect in the conviction or sentence. Even in those circumstances, a

prosecutor can do justice by the simple act of going back into court and agreeing that justice

should be done." United States v. Holloway, 68 F. Supp. 3d 310, 311 (E.D.N.Y. 2014).

    In Holloway, Judge Gleeson — recognizing the excessive nature of Francois Holloway's

mandatory minimum sentence of fifty-seven years for three convictions under 18 U.S.C. § 924(c)

— called on the U.S. Attorney's Office to agree to an order vacating two of Holloway's three

§ 924(c) convictions so Holloway could face a "more just resentencing." 68 F. Supp. 3d 310, 314

(E.D.N.Y. 2014). The United States Attorney's Office, under the leadership of Attorney General

Loretta Lynch, ultimately agreed to the Court's vacatur of two of the § 924(c) convictions, and the court proceeded to resentence Holloway on the remaining § 924(c) count.

Prosecutors have exercised this power to do justice in other cases involving harsh mandatory minimum sentences.[12] The Court now calls on the appropriate officials in the United States Attorney's Office to consider exercising that power in this case by agreeing to withdraw the § 851 Information so that the Court may impose a sentence on defendant Tyrone Trader that better serves the interests of justice.

## V.    CONCLUSION

For the foregoing reasons, Trader's Motion to Amend his § 2255 Motion is granted, and his § 2255 Motion, as amended, is dismissed and denied without an evidentiary hearing. An appropriate order follows.

---

[12]    See United States v. Martinez-Blanco, No. 06-cr-396 (N.D. Ga. Mar. 31, 2014) (order granting the joint motion of the parties to reduce mandatory sentence of life imprisonment, imposed pursuant to the Government's filing of a notice under 21 U.S.C. § 851, to a 25-year term); United States v. Williams, No. 12-cr-8 (D. Mont. Dec. 18, 2012) (approving, with consent of the government, dismissal of three of the four § 924(c) counts on which defendant had been convicted at trial); United States v. Hungerford, No. 03-cr-74 (D. Mont. Oct. 27, 2010) (upon agreement of the parties, granting Government's motion to dismiss all but two counts of conviction, including six of seven § 924(c) counts); United States v. Washington, No. 11-cr-605, slip op. at *12 (S.D.N.Y. July 31, 2014) (questioning the justice of imposing a 52-year mandatory sentence on defendant and urging the Government to consider "whether this is a sentence and an exercise of prosecutorial discretion worthy of the public's trust and confidence"; the Government ultimately withdrew one § 924(c) count and the Court sentenced defendant to 27 years' imprisonment).