IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | CRIMINAL ACTION |
| v. | |
| TYRONE TRADER | NO. 04-680-06 |

DuBOIS, J.                                                                                                          February 17, 2021

## M E M O R A N D U M

### I.  INTRODUCTION

*Pro se* defendant, Tyrone Trader, is an inmate at Federal Correctional Institution Gilmer ("FCI Gilmer").  Presently before the Court are four motions filed by *pro se* defendant: (1) Motion for Compassionate Release; (2) Motion for Discovery; (3) Motion to Continue; and (4) Motion for Order.

*Pro se* defendant has served approximately 222 months, with good time credit,[1] of a 300-month sentence for low-level drug offenses at a facility where more than 300 inmates have tested positive for COVID-19.  For the reasons that follow, *pro se* defendant's Motion for Compassionate Release is granted, and *pro se* defendant's sentence is reduced to time served.  *Pro se* defendant's remaining motions are denied as moot.

### II.  BACKGROUND

#### A.  Instant Offenses

On January 18, 2007, a jury convicted *pro se* defendant of conspiracy to distribute more than five kilograms of cocaine and other substantive cocaine distribution offenses.  *Pro se* defendant was "a street-level dealer [at] the bottom rung of the conspiracy and was directly

---

[1] On October 2, 2020, the Government reported that *pro se* defendant has "received credit for approximately 26 months of good conduct time."  Gov't Resp. at 6.  The record does not disclose good time credit earned since that date.

responsible for the distribution of only 269.4 grams of cocaine." Mem. and Order dated Aug. 19, 2015, at 3.

### B.  Sentencing

*Pro se* defendant was sentenced by the Court on September 29, 2008 to, *inter alia*, a mandatory minimum sentence of life imprisonment.  The mandatory minimum sentence was based on *pro se* defendant's criminal responsibility for all cocaine distributed during the course of the drug conspiracy.  At sentencing, after noting *pro se* defendant's criminal history which included a number of convictions for drug-related crimes, the Court stated as follows:

> [E]ven with your prior drug crimes and your other criminal conduct . . . a life sentence for the crime of conviction is much too harsh a sentence to impose.  It just overstates the seriousness of the offense.  And were I given any discretion . . . I would impose a substantially lower sentence.

Sentencing Tr. at 41:20–23, 43:4–8.  The Court also ordered that "[i]f released from imprisonment, defendant shall be placed on supervised release for a term of ten years . . . ." *Id*. at 43:23–44:5.

On December 20, 2016, *pro se* defendant's sentence was commuted to a term of 300 months' imprisonment, "leav[ing] intact . . . the 10-year term of supervised release." Document No. 772 at 3.  *Pro se* defendant has served approximately 196 months in custody, which, with good time credit of twenty-six months, is approximately 222 months, or 75% of his sentence.  The Government reports that *pro se* defendant's anticipated release date is March 31, 2026. Gov't Resp. at 6.

### C.  Present Motions

#### 1.  *Pro Se* Defendant's Motion for Compassionate Release

On September 14, 2020, *pro se* defendant filed the pending Motion for Compassionate Release.  This is *pro se* defendant's third request for relief based on the ongoing COVID-19

2

pandemic.[2] In support of the motion, *pro se* defendant states that he is at increased risk of contracting COVID-19 because he "suffers from Type-2 diabetes and glaucoma." Def.'s Mot. at 4. *Pro se* defendant's medical records confirm that he was diagnosed with "Type 2 diabetes mellitus" on April 26, 2018 and "unspecified glaucoma" on May 30, 2019.[3] Document No. 805 at 13. *Pro se* defendant also identifies as risk factors his age and weight—he is fifty-three years old, six feet tall, and weighs 230 pounds. *Id.* at 2; Document No. 797 at 1. His height and weight place his body mass index ("BMI") at 31.19.

*Pro se* defendant claims that FCI Gilmer has failed to control the spread of COVID-19. The Bureau of Prisons ("BOP") website states that, as of February 9, 2021, 324 inmates have tested positive for COVID-19 at FCI Gilmer, including nine active cases. Federal Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/ (accessed Feb. 9, 2021).

*Pro se* defendant also argues he "has been working hard to become a better person." Document No. 797 at 1. He has filed certificates showing that he completed drug abuse treatment programs on August 29, 2017 and September 11, 2018, respectively. *Id*. at 8, 9. With respect to his conduct in custody, the Government reports that *pro se* defendant "has received six disciplinary infractions while serving his current sentence." Gov't Resp. at 6–7. All but one of these infractions—*pro se* defendant's "engaging in a group demonstration"—occurred prior to 2012. *Id.*

---

[2] On May 26, 2020, *pro se* defendant filed a motion requesting a transfer from FCI Gilmer to home confinement. Document No. 792. On July 27, 2020, *pro se* defendant filed a motion requesting compassionate release under 18 U.S.C. § 3582(c)(1)(A). Document No. 797. In both motions, *pro se* defendant stated that he was concerned about contracting COVID-19 at FCI Gilmer. The Court denied both motions on the ground that *pro se* defendant failed to exhaust his administrative remedies. Document Nos. 796, 799.

[3] According to the Government, *pro se* defendant's "latest lab results . . . showed that his blood sugar has been improving (from 6.4% in January 2019 to 5.8% in May 2020) and he [is] now in pre-diabetes stage." Gov't Resp. at 9. The Government cites no portion of *pro se* defendant's medical records, and the Court has found none, stating that *pro se* defendant has pre-diabetes rather than Type 2 diabetes mellitus.

Finally, *pro se* defendant claims he has "strong family support thats [sic] ready and willing to help in all areas that's needed." Document No. 797 at 2. He states that, if the Court grants compassionate release, he will live with his sister, Sonja, in Chester, Pennsylvania.

On October 2, 2020, the Government filed its response to *pro se* defendant's Motion for Compassionate Release. The motion is thus ripe for decision.

### 2. *Pro Se* Defendant's Additional Motions

After filing the Motion for Compassionate Release, *pro se* defendant filed three additional motions on October 16, 2020. First, he filed a Motion for Discovery seeking information regarding FCI Gilmer's efforts to limit the spread of COVID-19. Document No. 807. Second, he filed a Motion to Continue seeking to "continue his time to respond to the government's reply" to the Motion for Compassionate Release. Document No. 808 at 1. Finally, he filed a Motion for Order requesting that the Court "strike the medical records related to his weight and diabetes." Document No. 809 at 1.

### III. DISCUSSION

#### A. Applicable Law

*Pro se* defendant seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Section 3582(c)(1)(A)(i) permits a federal prisoner to petition a court for compassionate release for "extraordinary and compelling reasons" after first filing a request for compassionate release with the prison warden.[4] 18 U.S.C. § 3582(c)(1)(A)(i). Generally, "extraordinary" means "[b]eyond what is usual, customary, regular, or common," and a "compelling need" is a "need so great that irreparable harm or injustice would result if it is not met." *United States v. Rodriguez*, 451 F.

---

[4] On August 9, 2020, *pro se* defendant sent an email to the Warden of FCI Gilmer requesting compassionate release. The parties do not dispute that *pro se* defendant has exhausted his administrative remedies.

Supp. 3d 392, 401 (E.D. Pa. 2020) (quoting Extraordinary, Black's Law Dictionary (11th ed. 2019)).

"Extraordinary and compelling reasons," for purposes of § 3582(c)(1)(A)(i), were previously defined by a policy statement in § 1B1.13 of the United States Sentencing Guidelines, which cites the (A) medical conditions, (B) age, and (C) family circumstances of the defendant and (D) "reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," as determined by the BOP.  U.S.S.G. § 1B1.13 cmt. n.1(A)-(D).  Although courts have concluded that this policy statement is no longer binding after enactment of the First Step Act, the "old policy statement provides helpful guidance" for courts applying § 3582(c)(1)(A)(i).  *United States v. Beck*, No. 13-186, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019); *see also Coleman v. United States*, No. 20-1769, 2020 WL 2079406, at *6 (E.D. Pa. Apr. 30, 2020) (DuBois, J.).

The Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 954, 597 (3d Cir. 2020).  Moreover, "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner." *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020).  Therefore, a general fear of contracting COVID-19 alone does not satisfy the "extraordinary and compelling reasons" requirement of the statute.  *United States v. Ramirez-Ortega*, No. 11-251-07, 2020 WL 4805356, at *2 (E.D. Pa. Aug. 18, 2020) (DuBois, J).  However, an inmate may be able to establish extraordinary and compelling circumstances when the inmate suffers from a medical condition that the CDC has identified as a risk factor for COVID-19.  *Rodriguez*, 451 F. Supp. 3d at 402.

"Not every defendant who presents a qualifying extraordinary and compelling reason is entitled to relief under Section 3582(c)(1)(A)." *United States v. Babbitt*, No. 18-384, 2020 WL 6153608, at *9 (E.D. Pa. Oct. 21, 2020). Before granting compassionate release, a court must consider (1) whether the defendant would present a danger to the community under 18 U.S.C. § 3142(g); and (2) whether a sentence reduction would be consistent with the factors enumerated in 28 U.S.C. § 3553(a). *Id*. Ultimately, compassionate release is appropriate only when there are extraordinary and compelling circumstances, the defendant's release would not pose a danger to the community under § 3142(g), and release would be consistent with the § 3553(a) factors.

### B. Motion for Compassionate Release

The Government argues that *pro se* defendant's Motion for Compassionate Release should be denied because (1) it is "not clear" whether *pro se* defendant's medical conditions constitute an extraordinary and compelling reason warranting compassionate release; (2) even if *pro se* defendant has stated an extraordinary and compelling reason, he presents a danger to the community under § 3142(g); and (3) the § 3553(a) factors weigh against reducing his sentence. Gov't Resp. at 17.

#### 1. Extraordinary and Compelling Reason

As discussed *supra*, a court may reduce a prisoner's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3852(c). "To determine whether extraordinary and compelling reasons exist in an individual case, we consider the circumstances of the COVID-19 pandemic, the defendant's health conditions, the defendant's age and the risk of contracting COVID-19 at the defendant's facility." *Babbitt*, 2020 WL 6153608, at *5. Courts also consider whether the defendant is "close to his release date." *Rodriguez*, 451 F. Supp. 3d at 405. For example, in *Rodriguez*, the court granted compassionate

6

release where the defendant, who had "diabetes, high blood pressure, and liver abnormalities," served seventeen years of a twenty-year sentence. *Id*. at 394. The *Rodriguez* court stated that "[k]eeping [defendant] in prison . . . makes a marginal difference to his punishment. But the difference to his health could be profound." *Id*. at 405. The Court next turns to *pro se* defendant's health-related issues.

First, *pro se* defendant's medical conditions place him at increased risk. His medical records confirm he was diagnosed with Type 2 diabetes mellitus and has a BMI above 30. According to the Centers for Disease Control and Prevention ("CDC"), individuals with Type 2 diabetes mellitus or a BMI above 30 are at "increased risk for severe illness for COVID-19." Gov't Resp. at 8 (citing CDC's website).

Second, it is undisputed that FCI Gilmer has active COVID-19 cases. The BOP website states that, as of February 9, 2021, FCI Gilmer has nine active COVID-19 cases, and more than 300 inmates have tested positive for COVID-19 since the onset of the pandemic.

Third, *pro se* defendant has served approximately 75% of his twenty-five year sentence for offenses related to cocaine distribution. *Pro se* defendant was convicted for his role as a "street-level dealer [at] the bottom rung of the conspiracy . . . ." Mem. and Order dated Aug. 19, 2015, at 3. Keeping *pro se* defendant in prison until his anticipated release date in March 2026 could make a "profound" difference to his health, but would only "make[] a marginal difference to his punishment."[5] *Rodriguez*, 451 F. Supp. 3d at 405.

The Court concludes that the combination of these circumstances—the nature of the crimes of conviction, *pro se* defendant having served the majority of his sentence, his medical

---

[5] This case is unlike *United States v. Nelson Rodriguez*, No. 12-486, 2021 WL 601510 (E.D. Pa. Feb. 12, 2021) (DuBois, J.), in which this Court denied compassionate release to a defendant who served the majority of his sentence. Unlike this case, where *pro se* defendant was a street-level dealer, the defendant in *United States v. Nelson Rodriguez* was convicted for "his role as a leader of a cocaine trafficking ring." 2021 WL 601510 at *1.

conditions, and the conditions at FCI Gilmer—constitute an "extraordinary and compelling reason" warranting compassionate release.  18 U.S.C. § 3852(c).

### 2.  Danger to the Community

"Before granting a motion for compassionate release based on an extraordinary and compelling reason, a court must find that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  *Babbitt*, 2020 WL 6153608, at *9.  Under Section 3142(g), courts must consider the nature and circumstances of the offense charged, "the history and characteristics of the person," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).

In weighing "the nature and circumstances of the offense charged," courts "focus on the violence of the crime and how long ago the crime took place."  *United States v. Ladson*, No. 04-697, 2020 WL 3412574, at *7 (E.D. Pa. June 22, 2020).  To determine "the history and characteristics of the person," courts consider the defendant's (1) "criminal background"; (2) "disciplinary record in prison"; (3) "participation in prison programming"; and (4) support from family.  *Id*. at *8.  Courts have not required the defendant "to have a clean behavioral record while in prison."  *Id*.

The Court recognizes that *pro se* defendant has "committed a lot of crime in the past."  Sentencing Tr. 51:4–6.  His criminal history involves convictions for drug-related crimes and false reporting to law enforcement.  Although this criminal history is serious, *pro se* defendant has never been convicted of a violent crime, and he has received only one disciplinary infraction in nearly ten years.  Gov't Resp. at 7.

*Pro se* defendant's disciplinary record in prison is similar to that of the defendant in *Ladson*. Like *pro se* defendant, who has only one disciplinary infraction since 2012, for "engaging in a group demonstration," the defendant in *Ladson*'s "most recent infraction—for disruptive group behavior—was his first infraction in five years." *Ladson*, 2020 WL 3412574, at *9. *Pro se* defendant claims he received his most recent infraction when he "was helping" the defendant in *Ladson* to "deescalate [a] conflict." Document No. 797 at 2. The Court in *Ladson* granted compassionate release, stating that the defendant's "disciplinary track record does not indicate he would be [a] dangerous member of his community." 2020 WL 3412574, at *9.

*Pro se* defendant's history of drug dealing is more than a decade behind him, and he has presented evidence that he "has been working hard to become a better person" while in prison. Document No. 797 at 1. He submitted certificates showing that he recently completed two drug abuse treatment programs. *Id*. at 9. *Pro se* defendant also claims he has "strong family support thats [sic] ready and willing to help in all areas that's needed." *Id*. at 2. He states that, "[s]hould the Court grant this motion, [he] will be living with his sister, Sonja," in Chester, Pennsylvania. Def.'s Mot. at 8.

For the foregoing reasons, the Court concludes that *pro se* defendant is not a danger to the safety of others or to the community under 18 U.S.C. § 3142(g).

### 3. Section 3553(a) Factors

Finally, the Court considers whether compassionate release is warranted under the factors set forth in 18 U.S.C. § 3553(a). "Because section 3553(a) establishes factors to consider in initially imposing a sentence, not every factor applies here." *Rodriguez*, 451 F. Supp. 3d at 406. The applicable Section 3553(a) factors are:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence to reflect the seriousness of the

9

>offense, promote respect for the law, provide punishment, deter criminal conduct and protect the public from further crimes by the defendant; (3) the kinds of sentences and sentencing ranges available; and (4) the need to avoid unwarranted sentence disparities among defendants committing similar offenses.

*Babbitt*, 2020 WL 6153608 at *10 (citing 18 U.S.C. § 3553(a)).

The Court first considers "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a).

As discussed *supra*, *pro se* defendant was convicted for his role as a "street-level dealer [at] the bottom rung of the conspiracy . . . ." Mem. and Order dated Aug. 19, 2015, at 3. His criminal history is mostly comprised of drug-related offenses and includes no violent crimes. Furthermore, he has presented evidence of his efforts to rehabilitate himself while serving his current sentence.

The Court next considers "the need for the sentence imposed." *Id*. The Court must impose a sentence that is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, provide punishment, deter criminal conduct and protect the public from further crimes by the defendant. *Id*. "[I]t is essential for courts to conduct a searching and individualized inquiry into the circumstances surrounding each defendant's involvement in a conspiracy to ensure that the defendant's sentence accurately reflects his or her role." *United States v. Williams*, 974 F.3d 320, 365 (3d Cir. 2020) (quoting *United States v. Metro*, 882 F.3d 431, 439 (3d Cir. 2018)).

With good time credit, *pro se* defendant has served approximately 222 months, or 75%, of his 300-month sentence for non-violent, drug-related offenses. Significantly, "[a]lthough [he] was charged with conspiracy to distribute more than five kilograms of cocaine," he was "directly responsible for the distribution of only 269.4 grams of cocaine." Mem. and Order dated Aug. 19, 2015, at 3. In light of his role as a "street-level dealer," his medical conditions, and the presence

of COVID-19 at FCI Gilmer, prolonging *pro se* defendant's incarceration would impose a sentence that is "greater than necessary." 18 U.S.C. § 3553(a).

Finally, the Court considers the Government's argument that *pro se* defendant's "mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A) would be 25 years" if he were sentenced today. Gov't Resp. at 6 n.3.

As a preliminary matter, this Court recently stated in *United States v. Ezell* that, pursuant to §§ 3582(C)(1)(a)(i), 3553(a), and 3142(g), it "has authority to reduce [a defendant's] sentence to a length it deems appropriate, even if that length is shorter than the current mandatory minimum." No. 02-815-01, 2021 WL 510293, at *7 (E.D. Pa. Feb. 11, 2021) (DuBois, J.). "[S]everal other district courts, including one in this District, [] have reduced sentences to below the current mandatory minimum in granting compassionate release." *Id.* at *8; *Rodriguez*, 451 F. Supp. 3d at 394. For example, in *Rodriguez*, the court granted compassionate release where the defendant was "in year seventeen of a twenty-year, mandatory-minimum sentence for drug distribution and unlawful firearm possession." *Rodriguez*, 451 F. Supp. 3d at 394.

The Court concludes that a reduction to time served is appropriate in this case on the ground that *pro se* defendant's time in prison has already accomplished all the goals of sentencing and his continued incarceration would serve no meaningful purpose. Further, *pro se* defendant has already served a longer sentence than his co-defendants Jamal Rideout and Larry Davis—who, like *pro se* defendant, were charged as street-level dealers at the bottom rung of the conspiracy. "Davis was released from prison on October 22, 2012; Rideout was released from prison on February 26, 2014." Mem. and Order dated Aug. 19, 2015, at 28–29.

For the foregoing reasons, the Court concludes that the § 3553(a) factors weigh in favor of compassionate release.

### C. Additional Motions

As discussed *supra*, in addition to the Motion for Compassionate Release, *pro se* defendant also filed motions: (1) seeking discovery regarding FCI Gilmer's efforts to limit the spread of COVID-19; (2) seeking to "continue his time to respond to the government's reply" to the Motion for Compassionate Release; and (3) requesting that the Court "strike the medical records related to his weight and diabetes." Document Nos. 807, 808, 809. In light of the Court's decision on *pro se* defendant's Motion for Compassionate Release, the Court denies these additional motions as moot.

## IV. CONCLUSION

For the foregoing reasons, *pro se* defendant's Motion for Compassionate Release is granted. *Pro se* defendant's sentence is reduced to time served, approximately 222 months after adjustment for good time credit. *Pro se* defendant's Motion for Discovery, Motion to Continue, and Motion for Order are denied as moot. An appropriate order follows.